Turner, J.
 

 In the case of
 
 Goodman
 
 v.
 
 Industrial Commission,
 
 135 Ohio St., 81, 82, 19 N. E. (2d), 508, it was said:
 

 “It hardly seems necessary to remark that in cases of this general type the peculiar facts of the individual case are largely controlling. Here, the members of this court are unanimously of the opinion that the appellee was entitled to a directed verdict or judgment in its favor upon the rehearing record before the court, and on the basis that no injury was shown.”
 

 Appellant in the instant case contends that the trial court should have sustained appellant’s motion for a directed verdict, for the reason that plaintiffs failed to prove an accidental injury within the meaning of the workmen’s compensation law. This motion was made at the close of plaintiffs’ evidence and renewed at the close of all the evidence.
 

 A careful reading of the record discloses no evidence tending to prove that the workman’s death was caused by a happening of a traumatic nature, accidental in origin or cause, the result of a sudden happening at a particular time. On the contrary, plaintiffs’ evidence affirmatively discloses that decedent was doing his regular job in the regular and ordinary way.
 

 There was only one fellow workman on the tower with plaintiffs’ decedent. By consent, the evidence of this fellow workman was introduced by plaintiffs by
 
 *176
 
 way of an affidavit. This affidavit discloses no overexertion and no other accidental injury. A part of this affidavit reads:
 

 “Affiant further states that to his knowledge the decedent did not injure himself in any way. That there was nothing at the top of the tower on which he could have struck himself as the niggerhead was on the uppermost part of the tower. That from the time decedent slumped in his belt and until he died he never regained consciousness.
 

 “Affiant further states that about four or five days prior to decedent’s death he, decedent, had seven or nine teeth pulled and had a very sore mouth. That the affiant overheard the decedent say one day, that the dentist told him after extracting his teeth that he should go home and stay there three or four days until his mouth would get straightened out. That the decedent did. not remain away from work following the extraction of his teeth. Affiant further states that he had never heard the decedent complain of any physical ailments, except his teeth. That he appeared to be in good physical condition and could keep up his end of the work in what he knew, as he was not an experienced lineman and depended upon affiant.
 

 “Affiant further states that he was present in the doctor’s office when he, the doctor, was making a thorough examination of the body and there was no evidence of external injury that could be seen. That the doctor informed this affiant in the presence of Martin and Nelson that the decedent died of a cerebral hemorrhage, as he could find no evidence of other cause. That the decedent prior to his collapse made no statements as to an injury or accident in ascending the tower on which they were working and on which he had been for about fifteen minutes.”
 

 Plaintiffs also introduced another affidavit containing the following statement:
 

 “Affiant further states that he made no inquiry of
 
 *177
 
 Parcell as to any injuries sustained by decedent but while at the doctor’s office decedent was thoroughly examined for any bruises, cuts or other injuries. That in the absence of any evidence of injury the doctor informed affiant that the decedent could have died either from a cist
 
 [sic]
 
 on the brain or a cist [sic] affecting one of the valves of the heart.”
 

 The only comment necessary in respect of both of these affidavits is that they were introduced by plaintiffs and were relied upon to prove plaintiffs’ case.
 

 Plaintiffs also called the doctor who performed the autopsy. The doctor testified:
 

 “Q. And outside of this hemorrhage in the brain, did you find anything that would particularly have caused his death, right at that time? A. Nothing, no. The body surface showed no contused wounds or abrasions.”
 

 In answer to a hypothetical question which contained no assumption of any exertion other than such as was ordinarily necessary in climbing the tower in the regular way,' this doctor testified on direct examination:
 

 “Q. Just give us your opinion first. A. My opinion was that that climbing certainly did have some bearing on this accident that happened. ’ ’
 

 On cross-examination, this doctor testified:
 

 “Q. Of course, you have no history of any trauma in this case? A. No, and no evidence there.
 

 “Q. So that would reduce the question as to the cause of this hemorrhage to one of the two — which do you say it was? A. Probably degeneration.
 

 “Q. That would be congenital? A. It is possible.
 

 “Q. Especially in a young man 32 years of age? A. That is right. * * *
 

 “Q. Prom the ordinary exertion of climbing these poles and towers it might have happened any day? A. Yes, sir.”
 

 Plaintiffs submitted the same hypothetical question to another doctor but the printed record discloses no
 
 *178
 
 answer thereto. However, a search of the original record reveals that this doctor answered: “My opinion is that the climbing was an exciting cause of the cerebral hemorrhage.” This answer plainly shows that the doctor was saying in effect that the workman’s ordinary work performed in the usual way was an exciting cause of the hemorrhage.
 

 This doctor also testified to some of the causes of cerebral hemorrhage, as follows:
 

 “Q. "What are they? A. Some exciting causes are trauma; unusual bodily strain, such as lifting; running; climbing; coughing; straining of stool, etc.”
 

 Plaintiffs offered evidence showing that prior to his last job decedent had worked in a sheet-steel mill, the nature of which work was disclosed by the following questions and answers:
 

 ‘ ‘ Q. Now, you just tell what he did down there at the Superior ? A. Why, he would pick up sheets, load them on the truck, tow them to the car and unload them on the loader and ship them, that is, ship them by the Superior Sheet Steel.
 

 ‘ ‘ Q. And, in unloading these sheets from a truck and loading them in a car, did any man help him? A. Yes, one on each end, and I think, sometimes,-one in the middle, but as a rule one man on each end.
 

 ‘
 
 ‘
 
 Q. They had one man on each end, and what would you say these packs weighed? A. Averaged from 50 to 100 pounds, or more.
 

 “Q. If they were more than 100 pounds, how many men would they have? A. Well, then they had three.
 

 “Q. And is it reasonable to say then, that approximately he averaged in unloading an average lift of, a weight of about fifty pounds ? A. Well, not that much, maybe not that much.
 

 “Q. If there was 100 pounds, these two men — (interrupted.) A. One on each end.
 

 “Q. Was there any climbing that he had to do? A. No climbing.
 

 
 *179
 

 ‘ ‘
 
 Q. Did lie go upstairs ? A. No.
 

 “Q. All the time unloading these packs from the truck and loading them into the car? A. Yes.”
 

 From this last-mentioned evidence, counsel for appellees argues that “There was ample evidence to support the claim that the work which deceased was performing at that time was a type and kind of work that this deceased was not accustomed to perform and was more strenuous than he had been in the habit of performing.”
 

 While the record discloses no objection to the introduction of the evidence showing the type of work performed for a former employer, such evidence was clearly immaterial. Overexertion may not be proved by comparing work done for the instant employer with work done for a former employer.
 

 That climbing the tpwer in question was strenuous work may be admitted, but this was the workman’s regular job and, according to the evidence, done in the regular way without any extraordinary effort or any deviation from the usual. Decedent had been employed regularly for four weeks prior to his death as a lineman and his regular and customary duty was to climb these towers.
 

 In the case of
 
 Haviland
 
 v.
 
 Industrial Commission,
 
 135 Ohio St., 545, 21 N. E. (2d), 658, the workman had been employed in the Columbus street repair' department at light labor or prying up, weighing and cleaning bricks. About nine days before his death he was transferred to the refuse collection division, his work consisting of gathering refuse, ashes, brush and rubbish, and loading them by shovel, boxes or barrels into a trailer or wagon for carting away. He died of angina pectoris after assisting two other employees to empty the contents of a barrel weighing from 400 to 600 pounds into a trailer, the decedent and another employee handling the barrel from opposite sides and the third employee handling the bottom or end. There
 
 *180
 
 was a disagreement in the testimony, varying, from a few to ten minutes, as to the interval between the time when the barrel was emptied and death ensued, but there was agreement that the decedent gave no expression of pain or suffering preceding his death and that he had visited a medical clinic where his complaint had been diagnosed as coronary heart disease.
 

 In that case, the trial court sustained a motion to direct a verdict for defendant at the close of plaintiff’s testimony. The Court of Appeals considered the evidence, came to the same conclusion, and affirmed the judgment of the trial court. Upon examination of the record, this court found no prejudicial error and affirmed the court below.
 

 In the case of
 
 Vogt
 
 v.
 
 Industrial Commission,
 
 138 Ohio St., 233, 34 N. E. (2d), 197, there was involved the single question, as stated by this court: “Does a petition which recites merely that an employee died from a coronary occlusion suffered while engaged in the performance of his regular duties consisting of heavy work, state a cause of action against the Industrial Commission of Ohio ? ’ ’ This court answered that question in the negative.
 

 Here, in the instant case, the question is: Is plaintiffs ’ evidence, which shows merely that an employee died from a cerebral hemorrhage suffered while engaged in the performance of his regular duties consisting of heavy work, sufficient to withstand the motion of defendant for a directed verdict?
 

 As stated in the case of
 
 Goodman
 
 v.
 
 Industrial Commission, supra:
 
 “Whatever the rule in other jurisdictions may be, the Supreme Court of Ohio, through a long line of decisions, has consistently defined the meaning of the term ‘injury,’ as used in the Constitution and statutes, to be physical or traumatic injuries accidental in their origin and cause; -the result of a sudden happening at a particular time.
 
 Industrial Commission
 
 v.
 
 Franken,
 
 126 Ohio St., 299, 185 N. E.,
 
 *181
 
 199;
 
 Industrial Commission
 
 v.
 
 Lambert,
 
 126 Ohio St., 501, 186 N. E., 89.”
 

 The record in this case indicates that plaintiffs’ decedent came to his death from a cerebral hemorrhage while he was occupied with his customary duties as a lineman, and there is no evidence of a physical or traumatic injury, accidental in origin and cause.
 

 The trial court erred in overruling defendant’s motion for a directed verdict, and the Court of Appeals erred in affirming the action of the trial court.
 
 Industrial Commission
 
 v.
 
 Davis,
 
 119 Ohio St., 221, 162 N. E., 796;
 
 Gwaltney
 
 v.
 
 General Motors Corp.,
 
 137 Ohio St., 354, 30 N. E. (2d), 342.
 

 Judgment reversed and final judgment for appellant.
 

 Weyg-andt, C. J., Williams, Matthias, Hart, Zimmerman and Bettman, JJ., concur.