McNEES, Plaintiff-Appellee, v. CINCINNATI STREET
RAILWAY CO., etc., Defendant-Appellant.

Ohio Appeals, First District, Hamilton County.

No. 7027.   Decided January 10, 1949.

**484**

Hoover, Beall, Whitman & Eichel, Cincinnati, for plaintiff-appellee.

C. R. Beirne, Cincinnati, for defendant-appellant.

### OPINION

By HILDEBRANT, J.:

This is an Industrial Commission case, in which the dependent widow's claim was denied by the Commission, for the reason "That the claim be disallowed on rehearing for the reason that the claimant has failed to prove by the preponderance of the evidence that the decedent's death was the result of an injury sustained in the course of, and arising out of employment with the employer named herein."

On appeal to the Common Pleas Court the following interrogatory was propounded to the jury:

"Was the cause of Taylor McNees' death, the mental strain and excitement of the driving conditions which prevailed as he drove the trolley bus on the night of January 17, 1944?"

The jury answered the interrogatory "Yes", and returned a general verdict for the defendant.

Plaintiff moved for judgment notwithstanding the general verdict, on the ground that the evidence in the case and the special verdict of the jury in answer to the interrogatory justified and required such a judgment. The Court granted the motion.

The principal question in the case is whether or not decedent suffered an injury within the meaning of the law in the course of and arising out of his employment by the defendant, who is an employer qualified under the law to pay compensation direct.

There is no substantial dispute as to the facts surrounding the death.

The record reveals that decedent had been employed for a number of years by the defendant as an operator of its trolley busses. Plaintiff testified that decedent, who was 57 years of age, was in apparent good health, except that for a period of a year of more he had complained of shortness of breath, dizziness and a pain around his heart, and down his left arm. Decedent was described by a fellow workman as being by temperament excitable, anxious about his work with respect to whether or not he was to be assigned to a hard or easy run, and as one who worried about the performance of his regular duties, and that on the night of, and shortly before his death the decedent was quite excited. Decedent was driving an old style, hard to steer trolley bus on the night of January 17th, 1944, about 11:00, P. M., outbound on the McMicken-Main run, and the night was so foggy that one could not see more than two or three feet ahead; close to the end of his outbound run, he picked up an inbound woman passenger, asking her help in guiding the path of the bus to the end of the line; his trolleys came off at the terminal and a fellow workman testified he was quite excited about it, and they had some trouble getting him started on his inbound run; inbound, his route is somewhat irregular for some distance at the start, which he traversed with the aid of a passenger, who testified that he stood on the step in the opened door of the bus and assisted in keeping on the course by observing the distance to the curb and calling right and left directions to the operator; at the same time a youth located directly behind the driver made a game of it by calling out exactly opposite directions, although told by the driver to keep quiet; on reaching a comparative straight away about a mile inbound, the bus got so far off course that the trolleys came off the wires; decedent got out and attempted to replace the trolleys; while stalled for that reason, another bus came up from the rear and that driver testified he got out and helped try to replace the trolleys without success; decedent was in and out of his bus two or three times during these efforts; the drivers agreed to try having the second bus push the first into position to reconnect the trolleys; the driver of the second bus testified he tried to push the other bus, but was only able to move it three or four feet, as it seemed to have the brake on, and on going to investigate, he found decedent slumped over his steering wheel; that he asked if he was sick, and he answered "yes", whereupon, with

help he stretched decedent out on the floor of the bus and called a police car, which took decedent to the hospital, where he was pronounced dead on arrival, as the result of a coronary thrombosis; a woman passenger on the bus testified that decedent slumped over his steering wheel with a gurgling sound.

There was evidence tending to show unusual physical exertion required in piloting the bus at 5 miles per hour speed over a wavering irregular course.

The medical testimony offered by plaintiff was confined to one expert witness, who never saw decedent, who answered a hypothetical question to the effect that the physical strain involved in the driving conditions would and probably did cause the thrombosis; questioned at call of the defendant the doctor who examined decedent at the hospital and stated the cause of his death, testified that the mental strain was more apt to have caused the death; both doctors admitted the thrombosis could be caused by either physical or mental strain or both, or could arise without any apparent strain of any kind being involved.

Under these facts, the question is was decedent's death caused by an injury received in the course of and arising out of his employment.

Starting with the original act of 1911, followed by that of 1913, and through the amendment of §1465-68 GC, in 1937, by the addition of the following paragraph: "The term 'injury' as used in this section and in the Workmen's Compensation Act shall include any injury received in the course of, and arising out of, the injured employee's employment," the Supreme Court has in a long line of decisions construed and defined the term "injury" as used in the Constitution and statutes and as applied to the limitless diversity of facts with which it has been confronted. These decisions reveal the reasons and background which have actuated the Court by necessity in order to maintain the constitutional differentiation between injury and disease, to append to the bare terms "injuries" and "injury" as used in the Constitution and statutes such language as accidental, physical, traumatic, accidental in origin and cause, accidental in character and result, and used as related to diseases which are occasioned by or follow as a result of physical injury or accelleration of a pre-existing condition, aggravated by physical injury. For a detailed and discerning history of the judicial construction from the inception of the law, reference is here made to the Article entitled "When is an Injury Not an Injury" by Stephen D. Hadley, of the Akron Bar, reported in 25 **Oh Ap** 485.

In the case of **Malone v. Industrial Commission, 140 Oh St, 292,** referring to the 1937 Amendment and stating the rule of statutory construction, the Court, at page 299, said:

"When an existing statute is repealed and a new statute upon the same subject is enacted to include an amendment, as in this case, it is presumed that the Legislature intended to change the effect and operation of the law to the extent of the change in the language thereof."

We, therefore, conclude that by the amendment, the legislature intended to do away with all limitation on the word "injury" previously placed thereon by judicial construction, save only the constitutional differentiation made between "injury" and "disease." This seems to be in accord with the concurring opinion in the Malone case, supra, wherein it is stated:

"Under the effective legislative definition, the word 'injury,' as applied in the Workmen's Compensation Act, includes 'any injury received in the course of, and arising out of, the injured employee's employment.'

"It therefore includes every injury thus occurring. Inquiry is thereby limited to determining whether the physical disability in question was caused by trauma and did not result from disease, and whether it occurred in the course of and arose out of the employment."

Limiting our inquiry here in conformity to the statement immediately above, it is apparent that the coronary thrombosis struck this decedent in the course of his employment, and while he was at the steering wheel of his trolley bus; it further appears that by the accident of weather he was exposed to a hazard greater than the general public, who were not required to drive a cumbersome vehicle on the public streets carrying passengers for hire with the consequential responsibility for their safety; it further appears that the driving conditions forced upon the decedent an unusual manner of performing his work and quite out of the ordinary in seeking directions from a passenger located on the step of the opened door, and complicated as it incidentally was by counter instructions in this case, these circumstances would seem to supply what was missing in the

**Nelson case, 150 Oh St, 1,** to make it a compensable injury as indicated by the statement of the Court at the bottom of page 9:

"In every muscular movement there is stress and strain, but, **unless there is something unusual or out of the ordinary in the manner of doing his work, which a person is either forced to undergo or undergoes voluntarily,** his death is not compensable when he dies from a condition which has long been with him." (Emphasis ours.)

Clearly, there was increased physical strain in peering into the blanket of fog, straining to keep on the course; these facts would seem to supply the causal connection between the employment and the mishap, in the light of medical testimony to the effect that the blood pressure could be increased thereby.

As to the question of trauma, it appears to be answered by the following statement in the Malone case, at page 300:

"This court is still committed to the proposition that a compensable injury under the Workmen's Compensation Act must be accidental and traumatic in character. This is necessary to differentiate compensable injury from disease which is not compensable unless caused by an injury, and except occupational diseases for which special provision has now been made under the law. Such holding, to the effect that a compensable injury must be accidental and traumatic in character, is in harmony with the holdings of practically all courts of last resort of states where Workmen's Compensation Acts are in force. **And this court takes the further position that accidental and traumatic injuries, having the other essential elements of a compensable injury, are compensable whether they are the result of accidental means or the result of the mishap itself proximately causing the harm or damage."** (Emphasis ours.)

We, therefore, conclude that decedent's death was the result of a sudden mishap occurring by chance, unexpectedly and not in the usual course of events at a particular time and place, and, therefore. compensable under the law.

Plaintiff's motion for judgment was not based on any claimed inconsistency between the general and special ver-

dicts of the jury, although here such verdicts are inconsistent, but was specifically directed at the general verdict based upon the evidence and the answer of the jury to the special interrogatory.

The facts as to what happened on the night of the death are not in dispute, the only difference in the record going to the opinion of the medical experts, wherein one views physical strain, the other mental strain as more probably the cause of the coronary thrombosis. Even this is not a clear cleavage of opinion, since both admit the thrombosis might be caused by either type of strain, both types in combination, or even without strain at all.

We are of the opinion that the evidence conclusively showed the death due to the unusual stress of the employment at the particular time and place under conditions not shared in by the public in general, so that both physical and mental strain to which decedent was subjected combined to produce the coronary thrombosis as the direct and proximate cause of his death.

The answer to the special interrogatory is not now inconsistent with a compensable injury or death, in view of the amendment making any injury, or in other words, every injury compensable suffered in the course of, and arising out of the employment.

Therefore, assuming all the facts claimed by way of defense and supported by evidence, to be true, nevertheless, there are no facts proven which render the death under the circumstances here not compensable.

The action of the trial court in granting the plaintiff's motion for judgment notwithstanding the general verdict is, therefore, sustained (Bank v. Youngstown, 143 Oh St, 523).

This result would seem to be in accord with the current trend and weight of authority in similar cases, as indicated by the text from 58 Am. Jur., 756, section 255:

"By the weight of authority, the sudden and unexpected breaking of some portion of the internal structure of the body, as in the case of cerebral hemorrhage, apoplexy, hernia, etc., or the failure of some essential function thereof, as in the case of heart failure, paralysis, and similar afflictions, brought about by the exertions of the employee while engaged in the performance of his duties, or by the conditions of the employment, even without any external happening of an accidental nature, is to be regarded as an accidental injury within the meaning of the terms 'injury by accident,' 'injury proximately caused by accident,' 'personal injury accidentally

sustained,' and similar expressions, as used in compensation statutes, as well as a simple personal injury, although there are holdings to the contrary. And this is true notwithstanding the workman may have been suffering from a pre-existing infirmity which constituted a predisposing cause of such disablement. It is said, in this connection, that an internal injury which is sudden, unusual, and unexpected is none the less accidental because its external cause is part of the victim's ordinary work. And the general rule has been held applicable where such affliction results from blood pressure intensified by vigorous muscular activity, while the employee is performing his work in the usual manner, without any extraordinary effort. It is especially applicable where the disablement or affliction is due to extraordinary effort or overexertion. Heart failure, paralysis, or similar affliction, resulting from excitement caused by some event occurring in the course of the employment has also been held to constitute a personal injury by accident arising out of the employment."

The judgment is affirmed.

ROSS & HILDEBRANT, JJ, concur in syllabus, opinion & judgment.