**McNEES, Plaintiff-Appellant, v. CINCINNATI STREET RAILWAY COMPANY, Defendant-Appellee.**

Ohio Appeals, First District, Hamilton County.

No. 7290. Decided April 19, 1951.

Hoover, Beall, Whitman & Eichel, Cincinnati, for plaintiff-appellant.

C. R. Beirne, Cincinnati, for defendant-appellee.

(SKEEL, PJ, HURD, J, of the Eighth District: STEVENS, J, of the Ninth District, sitting by designation.)

## OPINION

By SKEEL, PJ.

This appeal on questions of law comes to this court from a judgment entered for the defendant in the Common Pleas Court of Hamilton County.

The plaintiff's cause of action is founded upon the provisions of the Workmen's Compensation Act. The plaintiff as the widow of Taylor McNees, filed a claim for benefits under the Act on the ground that her husband came to his death because of injuries suffered in the course of his employment with the defendant. The claim was disallowd when presented to the Industrial Commission of Ohio and upon rehearing, as provided by law, was again disallowed, the Industrial Commission ruling as follows:

"That the claim be disallowed for the reason that proof of record fails to show the decedent died as a result of injuries sustained in the course of and arising out of his employment."

This order was appealed to the Common Pleas Court of

Hamilton County where, upon trial to a jury, a verdict was returned for the defendant. In addition to the general verdict, the jury answered a special interrogatory which was:

"Was the cause of Taylor McNees' death, the mental strain and excitement of the driving conditions which prevailed as he drove the trolley bus on the night of January 17, 1944?"

"Answer: Yes."

The plaintiff then filed a motion for judgment n. o. v., which motion was granted.

The court, in granting such motion and entering judgment for the plaintiff, giving her the right to participate in the fund notwithstanding the jury's verdict for the defendant, concluded that that part of its general charge to the jury which stated:

"Now, mere mental strain or worry is not an injury within the meaning of the Workmen's Compensation Law."

was in error and that the jury's answer to the interrogatory, together with the admitted facts and unchallenged evidence, established that Taylor McNees' death resulted from a compensable injury under. the Workmen's Compensation Act. This judgment was affirmed by the Court of Appeals but upon appeal to the Supreme Court the judgment was reversed and the cause was remanded with instructions to enter judgment for the defendant upon the verdict of the jury, the court holding that: **(152 Oh St 269)**

"1. The answers of a jury to special interrogatories will not authorize a judgment different from that authorized by a general verdict, where such answers can be reconciled with the general verdict. (**Davis v. Turner, 69 Oh St 101,** and **Ohio Fuel Gas Co. v. Ringler, 126 Oh St 409,** approved and followed.)
\* \* \*

"3. Where, on appeal from disallowance of a claim for death benefits under the Workmen's Compensation Act, a jury answers, 'yes' to a special interrogatory reading: 'Was the cause of Taylor McNees' death the mental strain and excitement of the driving conditions which prevailed as he drove the trolley bus on the night of Jan. 17, 1944' (the night of his death) such answer does not determine that there was a proximate causal relationship between McNees' employment and either his death or any compensable injury.

"4. Death benefits under the Workmen's Compensation Act can be awarded only where the death was the proximate result of a compensable injury.

"5. An injury is not compensable under the Workmen's Compensation Act unless it is received in the course of and arises out of the employment.

"6. An injury does not arise out of the employment within the meaning of the Workmen's Compensation Act, unless there is a proximate causal relationship between the employment and the injury."

The case was returned to the Common Pleas Court where judgment was entered for the defendant on the verdict of the jury. The plaintiff filed a motion for new trial, which was overruled. The judgment thus entered is the basis for this appeal.

The evidence of what took place just prior to the death of Taylor McNees is not in dispute. He was employed as a driver of a trolley bus by the defendant and was on duty the night of January 17, 1944. The night was very foggy. As he drove his bus down town the fog was so dense that a passenger stood on the front step of the bus to direct the decedent in avoiding the curb or striking parked cars. The defendant seemed excited before he started on the trip which continued as he proceeded down town. About a mile from the end of the line from whence his trip began, the trolley poles were pulled off the wires because the bus was driven too far to the left. The decedent tried to get them back on, without success. The bus driver in the bus following, tried to give assistance when he came upon the scene. After it was found impossible to get the trolley poles back on the wires he suggested pushing the bus driven by decedent back under the trolley wires. As the second driver started to push the bus he moved the first bus only about four feet when the brakes seemed to set. He got out and found that the decedent had collapsed over the steering wheel. He was sick. He was removed to the hospital where he was pronounced dead, the deputy county coroner finding the cause of death as "coronary thrombosis." The decedent had suffered from a heart condition for about a year prior to Jan. 17, 1944.

The plaintiff, to support her claim, called a doctor who testified that McNees' death was due to "the tremendous strain that was placed upon this individual's physical being and his mental being, both, but particularly on the strain of his physical effort * * *."

Upon cross-examination this witness admitted that death may result from coronary thrombosis at a time when the decedent is not undertaking physical or mental strain of any kind.

The defendant's expert medical witness testified that the anxiety and nervousness more than the physical strain was the cause of death. He said:

"I can safely say that a majority of coronary conditions

result not from physical exertion as much as from mental strain or some other condition which we don't know * * *. It may come on a person just walking-down the street or without any more physical exertion than they normally exert."

As indicated above, the jury's verdict was for the defendant and after the Supreme Court ordered the Court to enter judgment on the verdict, the trial court overruled plaintiff's motion for a new trial.

The plaintiff presents two grounds for reversal:

"The first is that the trial court, both in its general charge and in a special charge given at the request of the defendant, committed error prejudicial to the plaintiff. The second is that the general verdict, in the light of the correct state of the law in the case, was manifestly against the weight of the evidence."

It is clear from a reading of the whole charge and the special charge that the jury must have understood the court to mean that if the decedent came to his death while at work, as a proximate result of a coronary thrombosis, which at the time of death was either activated or brought into existence by mental strain or nervous excitement, that such death would not be the result of a compensable injury received in the course of his employment, even though such mental strain or nervous excitement was produced by unusual conditions under which the decedent was at the time compelled to work.

The question of whether or not the court in entering judgment n. o. v. upon the jury's finding, that the death was caused by nervous excitement and mental strain, constituted error was presented to the Supreme Court by the defendant (152 Oh St 269) as disclosed by the defendant's brief filed in that proceeding. Subdivision II on page 14 of such brief presents the question as follows:

"Death resulting from mental strain and excitement of conditions of employment is not compensable under the Workmen's Compensation Act."

In support of its claim the defendant cites the following cases: **Industrial Commission of Ohio v. O'Malley 124 Oh St 401; Shea v. Youngstown Sheet & Tube Co. 139 Oh St 407; Nelson v. Industrial Commission 150 Oh St 1.**

The O'Malley case, supra, is clearly not in point, as there the excitement was in no way connected with the decedent's employment, although this point is not mentioned by the court. The excitement was occasioned because of the police asking to have a gate opened to investigate why a door was open in the building next to the building of decedent's employer. The decedent stated after opening the door between the properties:

"That he was sick from the excitement of it all and that he had high blood pressure."

The post mortem disclosed no evidence of injury, there was no paralysis before death. The court said at page 403:

"If O'Malley's death was caused by excitement merely, it was not caused by any physical injury contributing to his death."

In the Nelson case, supra, the decedent was not confronted with any unusual conditions at the time he died. The court said in the 1st and 3rd paragraphs of the syllabus:

"1. The sudden death of a workman while engaged in his usual occupation, which death resulted from a pre-existing physical condition, is not of itself evidence that an accidental injury within the contemplation of the Workmen's Compensation Act caused or accelerated such death. * * *

"3. Where a workman suddenly dies at his work and his death results from cerebral hemorrhage and it appears that the workman had been suffering from cerebral thrombosis, such death is not compensable in the absence of evidence showing that an accidental injury caused or contributed to the death. Under such circumstances, in the trial of an action by the decedent's dependent to participate in the state insurance fund, a trial court is obligated to instruct a verdict and enter a judgment against the plaintiff."

The court in its opinion in the Nelson case, quotes from **Goodman v. Industrial Commission, 135 Oh St 31,** and **Cordray v. Industrial Commission, 139 Oh St 173.** On page 7 the court says:

"In the Goodman case, a 48 year old baker, while engaged in his usual occupation, shortly after he had commenced work, suffered an acute dilation of the heart from which he died on the same day. Since all the eye-witnesses testified that Goodman was at his bench, handling dough in the usual way, and under the usual conditions, when he collapsed, and that he was not engaged in any extraordinary effort at the time he did not suffer any compensable injury."

"The court there said:

"'Whatever the rule in other jurisdictions may be, the Supreme Court of Ohio, through a long line of decisions, has consistently defined the meanings of the term 'injury,' as used in the Constitution and statutes, to be physical or traumatic injuries accidental in their origin and cause; the result of a sudden happening at a particular time.'"

"In the Cordray case, the first two paragraphs of the syllabus are as follows:

"'1. In an action by the dependents of a workman against

the Industrial Commission in which no evidence is offered by claimants tending to establish that the workman's death was the result of a sudden happening at a particular time causing a physical or traumatic injury accidental in origin and cause, it is error for the trial court to overrule a motion by the commission for a directed verdict in its favor.

" '2. Where the plaintiff's evidence discloses only, that a workman while engaged in performing the usual duties for which he was employed, in the usual and regular way without any extraordinary effort, suffered a cerebral hemorrhage, no compensable injury is shown. The occurrence of a cerebral hemorrhage is not of itself proof that it resulted from a compensable injury.' "

These cases not not deal with the question here presented. In the case now before us, there can be no doubt but that death resulted from a physical injury to the heart of the decedent and that at the time of his death, while he was engaged in his work of driving a bus, he was met with unusual conditions different from what were ordinarily encountered, thereby tending to bring on nervous excitement and mental strain which the jury said was a cause of his death.

The Supreme Court at page 274 of the McNees case, supra, says:

"Since the jury's answer to the special interrogatory finds a causal connection between decedent's death and the strain and excitement of certain conditions of his employment, it necessarily establishes a causal connection between his employment and the coronary thrombosis. This follows because there is no dispute in the evidence as to the fact that coronary thrombosis was the proximate cause of death. When it refers to 'the cause of Taylor McNees' death' the jury's answer to the special interrogatory negatives the existence of other causes."

This case (152 **Oh St** 269) as above indicated, was decided on the question of whether or not the mental strain and nervous excitement which the jury found to be the cause of death, was the proximate and not a remote cause of death, inasmuch as there was no controversy about the fact that the decedent came to his death of a coronary thrombosis and one of the doctors had testified that in many cases of that kind neither physical nor mental strain was found to be present. That part of the opinion of the Supreme Court last quoted, was concurred in by Judge Hart in his dissenting opinion. In other words, the court did not sustain the defendant's claim that death, resulting from a coronary thrombosis brought on

or aggravated by mental strain and nervous excitement because of unusual conditions under which the decedent was working at the time of his death, could not be a compensable injury.

On the question of mental strain, worry and anxiety, it is stated in 58 American Jurisprudence, Sec. 255, commencing at page 756 as follows:

"By the weight of authority, the sudden and unexpected breaking of some portion of the internal structure of the body, as in the case of cerebral hemorrhage, apoplexy, hernia, etc., or the failure of some essential function thereof, as in the case of heart failure, paralysis and similar afflictions, brought about by the exertions of the employee while engaged in the performance of his duties or by the conditions of the employment even without any external happening of an accidental nature, is to be regarded as an accidental injury within the meaning of the terms 'injury by accidents' 'injury proximately caused by accident' 'personal injury accidentally sustained,' and similar expressions, as used in compensation statutes, as well as a simple personal injury, although there are holdings to the contrary. And this is true, notwithstanding the workman may have been suffering from a pre-existing infirmity which constituted a predisposing cause of such disablement. It is said, in this connection that an internal injury which is sudden, unusual and unexpected is none the less accidental because its external cause is part of the victim's ordinary work."

The cases supporting the great weight of authority are set forth in the annotation supporting the above statement. The holdings to the contrary, referred to above, are not in conflict with the situation presented in this case. The cases cited by Zimmerman, J., in his dissenting opinion, **152 Oh St at page 286,** are Hope v. Royal Indem. Co. 90 Fed. (2d) 387 and Von Ness v. Borough Haledon, 136 N. J. L. 623, 56 App. (2d) 888, are also directly in point.

We must therefore conclude that the court was in error prejudicial to the rights of the plaintiff in the charge to the jury that "* * * mere mental strain or worry is not an injury within the meaning of the Workmen's Compensation Law" under the circumstances of this case.

The Court is unable to agree that the plaintiff's second claim of error that the judgment is manifestly against the weight of the evidence is sustained and therefore such claim of error is overruled.

For the foregoing reasons, that is, that the court committed error prejudicial to the plaintiff in its general charge to the

jury and in its special charges, the judgment is reversed and the cause is remanded for further proceedings according to law. Exceptions noted.

HURD, J, concurs.
STEVENS, J, dissents.
(See Concurring Opinion by HURD, J.)

By HURD, J. (Concurring.)

In my opinion the judgment should be reversed also on the ground that it is against the manifest weight of the evidence for the reasons herein stated.

The Supreme Court has held in the majority opinion by Taft, J. (McNees v. Cincinnati Street Railway Co., 152 Oh St 269) that in passing upon a motion for judgment non obstante veredicto "neither the trial court, the court of appeals, nor this court, may weight the evidence." (Sec. 11601 GC) (See syllabus 2 at page 269). However, this court is not now precluded in this appeal from an order overruling a motion for a new trial, from passing upon the question of whether the verdict of the jury was contrary to the manifest weight of the evidence. It is clear from an analysis of the opinion of the Supreme Court that the evidence was not weighed by that court, for at page 281 we find the following statement:

"We have, therefore, a situation where the evidence received upon the trial is not such as to require a determination, as a matter of law that decedent's employment was the proximate cause of the coronary thrombosis, which admittedly caused decedent's death. Assuming, without deciding, that there was sufficient evidence tending to prove that such employment was the proximate cause of the coronary thrombosis or death, so that there was a question for the jury on such proximate causation, the answer to the interrogatory does not determine that anything was a proximate cause."

Coming now to a consideration of the evidence, the record shows that there were two medical witnesses, one called on behalf of the plaintiff and the other on behalf of the defendant. Plaintiff's witness (Dr. Heinold), testified positively that there was a causal relationship between the events immediately preceding the death and the death. He testified in substance that the incidents of decedent's employment contributed to his death because these incidents would cause a raising of blood pressure in an artery somewhat occluded and would cause a sudden clotting and closing up of the full artery preceding sudden death. While he also testified that a person might die of coronary thrombosis without strain,

it should be observed most emphatically that all of the evidence in this case pointed unmistakably to an unusual strain in the operation of the bus in a dense fog. While the general public was exposed to the same fog, the decedent with a pre-existing heart condition was in an entirely different position from the general public, being obliged to work under the most unusual conditions then existing which in any common sense view of the facts was the proximate cause of the coronary thrombosis and the resulting death.

The statement of Dr. Heinold, amply supports this conclusion when he testified that:

"the events previous to the man's collapse contributed to the collapse and his eventual death because of the tremendous strain that was placed upon this individual's physical being and his mental being both, but particularly on the strain of his physical effort."

These events could not possibly be other than the activities, exegencies and conditions arising out of his employment.

Defendant's medical witness (Dr. Ventress) when asked concerning the factors which caused the death of McNees, outlined these factors as being—very bad driving conditions due to the fog; the aggravation by a passenger contradicting those attempting to help the decedent, and the responsibility for the safety of his passengers under the unusual conditions to which the bus driver was subjected at the time of his death. He also testified:

"I think that this anxiety and nervousness, more so than any physical exertion, would be the factor that caused the coronary to become aggravated enough to cause death."

It should thus be noted that while Dr. Ventress emphasized anxiety and nervousness, he did not exclude the physical exertion caused by the necessity of decedent to stop his bus, get off and replace the trolley poles on the wires two or three times before he collapsed. While he minimized the effect of the physical exertion, he did not exclude it entirely nor did he testify at any time that there was not a proximate causal relationship between the employment and the death.

It is also well to note in this connection that no charge was asked or given on the question of proximate causal relationship between the conditions, activities and exegencies of the employment and the death. Therefore, whether we consider this testimony and the record as a whole, it seems to me that the conclusion is inevitable that the verdict of the jury was so clearly contrary to the manifest weight of the evidence as to require a reversal on that ground and a remanding of the case for a new trial according to law.