WILLIAMS, APPELLEE, *v.* INDUSTRIAL COMMISSION OF OHIO, APPELLANT.

(No. 1021—Decided October 10, 1953.)

*Mr. Philip R. Finkelmeier, Mr. C. H. Taylor* and *Messrs. Hoover, Beall, Whitman & Eichel,* for appellee.

*Mr. C. William O'Neill,* attorney general, *Mr. Chalmers P. Wylie* and *Mr. Harris F. Jacobs,* for appellant.

MATTHEWS, P. J.  Berry Williams had been employed by the Sorg Paper Company for about 20 years when on October 13, 1949, while in the course of his employment in his employer's factory, at Middletown, Ohio, he suddenly developed coronary occlusion, resulting in his immediate death.  The Sorg Paper Company was amenable to and had complied with the Workmen's Compensation Law.  His widow, the plaintiff in this case, filed a claim for compensation with the Industrial Commission.  On rehearing, her claim was disallowed on the ground that the employee's death was not due ''to an injury sustained in the course of and arising out of his employment.''

Within the time prescribed by law, the widow filed her petition in the Court of Common Pleas of Butler County, alleging that her husband sustained an injury

when excessive strain in connection with his employment caused a coronary occlusion, which in turn caused his death, and that his injury and death resulted directly in the course of his employment from a cause arising out of such employment.

The Industrial Commission admitted that Berry Williams had been employed by The Sorg Paper Company, a complying employer, and that he had died on October 13, 1949, and then specifically denied that he had received any injury while employed, or that his death from coronary occlusion was caused or contributed to by any injury received in the course of and arising out of his employment.

The issues of fact were submitted to a jury which found in favor of the plaintiff. The court overruled the defendant's motion for a new trial and entered judgment in plaintiff's favor. This appeal is from that judgment.

Defendant assigns two errors as the basis of its prayer for a reversal of the judgment. They are that the judgment is manifestly against the weight of the evidence, and, secondly, that it is contrary to law.

Counsel have cited and commented upon many cases construing the constitutional and statutory provisions upon which the rights of employees to participate in the Workmen's Compensation Fund are predicated. However, as we view it, there is very little difference between them on the law applicable to the rights of employees injured during their employment, or of their dependents in the event the death of the employee results from such injury.

The whole superstructure of statutory enactment and judicial interpretation is based on the provision found in Section 35, Article II of the Ohio Constitution, conferring power upon the General Assembly to pass laws providing for compensation "to workmen and their dependents, for death, injuries or occupa-

tional disease *occasioned* in the course of such workman's employment.''

We understand the word, ''occasioned,'' as used here to be synonymous with ''caused.''

In the exercise of this power, the General Assembly passed Section 1465-68, General Code, in which it provided for compensation for injuries ''in the course of employment.'' In another part of the section and in another connection, the basis of the exemption of the employer was made expressly to depend upon the injury occurring ''in the course of and arising out of his employment.''

In the early case of *Fassig* v. *State, ex rel. Turner, Atty. Genl.,* 95 Ohio St., 232, 116 N. E., 104, the court had occasion to construe the statute and to pass upon the constitutionality of some of its provisions. The construction then placed upon it has remained unchanged, although the language used in other cases has at times differed in order to make clear the result as the rule was applied to particular facts. In the last paragraph of the syllabus of the *Fassig case* the court stated that the provisions in Section 35 of Article II referred ''only to an injury which is the *result* of, or arises out of the employment'' and ''do not cover any injury which has its cause outside of and disconnected with the employment, although the employee may at the time have been engaged in the work of his employer in the usual way.'' At page 247, *ibid.,* the court said: ''It was plainly the intention of the framers of the amendment, and of the statute, to provide for compensation only to one whose injury was the result of or connected with the employment, and would not cover any case which had its cause outside of and disconnected with the employment, although the employee may at the time have been actually engaged in doing the work of his employer in the usual way.''

In 1937, the General Assembly amended Section

1465-68, General Code (117 Ohio Laws, 109), by expressly limiting compensability to injuries received in the course of and arising out of the employment. In the language of the Constitution, such injuries are *occasioned* in the course of the employment.

In the multitude of cases that have arisen, the most frequently recurring problem confronting the courts has been the determination of whether the workman's injury bore such a relation to his employment as to make it compensable. That it had to be *occasioned* in the course of the employment was clear. That an injury that was received during employment or in the course of employment, but having no relation to the employment, was not compensable, was equally clear. It had to be caused by or result from the employment. The question was whether the cause and result have to be direct or proximate. Would any relation to the employment, even though remote, be sufficient? These questions were finally answered in the case of *McNees* v. *Cincinnati Street Ry. Co.*, 152 Ohio St., 269, 89 N. E. (2d), 138, although the answer had been foreshadowed in many intervening cases.

In that case, the court stated in the syllabus:

"An injury does not arise out of the employment, within the meaning of the Workmen's Compensation Act, unless there is a proximate causal relationship between the employment and the injury."

It was decided also in the same case that death benefits were dependent upon the death resulting from an injury resulting directly from the employment.

Nothing was said in the Constitution or the statutes about any requirement of proof that the injury was accidentally received in order for it to be compensable. The only express limitation was against purposely self-inflicted injuries. However, most industrial in-

juries are accompanied by, or result from some unintended deviation from the usual course of business. In such cases, we have an accident or unforeseen occurrence independent of the injury, by which the injury is directly caused. In many cases, language has been used which, it has been argued, indicated that the Supreme Court had decided that such an unforeseen occurrence, independent of the injury itself, was essential. Finally, certain types of cases were presented that challenged the attention of the court to this specific question. Cases of sun stroke, heat prostration and the collapse in the course of the employment of an employee who was suffering from some disease which was the immediate cause of his death, but which might not have occurred at that time except for some condition of the employment, were presented for decision.

We believe the clearest and most direct statement of the position of the Supreme Court is found in the case of *Malone* v. *Industrial Commission,* 140 Ohio St., 292, 43 N. E. (2d), 266. Malone worked in a foundry where the heat was 113 degrees when the temperature outside was only 90 degrees. He collapsed because of the heat and died the day thereafter from heat prostration. There was no evidence of an unforeseen occurrence other than the collapse. It was urged by the defendant that as there was no proof of an accidental injury, there was no right to an award. In rejecting this contention, the court reviewed all its prior decisions bearing on the question and pointed out that in many of them recoveries had been upheld where no unforeseen occurrence preceded or accompanied the injury, *i. e.,* where the only unforeseen occurrence was the injury itself.

At page 301, the court quoted with approval from

the opinion of Judge Cardozo in *Connelly* v. *Hunt Furniture Co.,* 240 N. Y., 83, 147 N. E., 366, 39 A. L. R., 867, as follows:

" 'The range of accident would be reduced, indeed, to vanishing dimensions if we were to take out of the category every case in which the physical movement had been willed without adverting to the consequences.' "

Following that quotation is the statement:

"While the decedent in this case voluntarily worked in a superheated atmosphere, his death was not the usual and expected result but the unusual and unexpected result of such employment, and was, therefore, accidental."

The second paragraph of the syllabus of the *Malone case* is as follows:

"When, in connection with an intentional act on the part of a workman which precedes an injury to him, something unforeseen, unexpected, and unusual occurs which produces the injury or from which the injury results, it is accidental in character and result."

As we construe all these cases decided by the Supreme Court, its quest was not to discover whether there had been an unforeseen occurrence preceding or accompanying an injury, but whether the injury was *"occasioned,"* or *"caused,"* or *"arose out of"* the employment. Of course, the relation of cause and effect between the employment and the injury is more striking when it is disclosed by an unexpected incident causing an injury. The unexpected occurrence is unimportant per se. It is only proof that the injury arose out of or was caused by the employment.

Of course, the prerequisite of the right to compensation is that an injury should have been suffered. Generally speaking, disease furnishes no basis for com-

pensation. But the injury or wound need not be to the external or exposed parts of the human body.

On this subject, the court said in the opinion in the *Malone case, supra,* at page 302:

"The appellant claims that the decedent not only suffered no accident but especially no physical or traumatic injury. A traumatic injury is one produced by any sudden violent attack upon the tissues or organs of a living body producing a wound, tear or an abnormal condition thereon or therein."

Before turning to a consideration of the evidence in this record, we desire to revert to the more recent case of *McNees* v. *Cincinnati St. Ry. Co., supra,* in which it was held that an injury is not compensable unless there is a direct or proximate causal relationship between the employment and the injury. McNees had operated a trolley bus for the defendant, a self-insurer, for several years. For more than a year he had complained of shortness of breath, dizziness and pain around the heart. He was operating a bus during a very heavy fog at the time of his collapse and death. The cause of death was diagnosed as coronary thrombosis. It was the claim of the plaintiff that the stress, strain, and excitement of operating the bus in the heavy fog caused his death at the time, and that it was compensable. The trial court held with the plaintiff.

The Court of Appeals, in the second paragraph of the syllabus in 84 Ohio App., 499, 87 N. E. (2d), 819, said:

"Such injury if caused by mental strain and excitement alone produced in the course of, and arising out of the employment is compensable, since the statute now makes any injury so received a compensable one."

On appeal to the Supreme Court, the judgment was

reversed and the cause remanded with instructions to enter judgment for the defendant. The trial court then entered judgment for defendant, and overruled the plaintiff's motion for a new trial. On appeal, that judgment was reversed for error in the charge that "mere mental strain or worry is not an injury within the meaning of the Workmen's Compensation Law." 90 Ohio App., 223, 101 N. E. (2d), 1. The court, at page 231, *et seq.*, quoted with approval from 58 American Jurisprudence, 756, Section 255, treating with the circumstances under which employees who brought to their employment an infirm body, such as an impaired heart, could recover compensation. It is pointed out that the great weight of authority holds that a sudden and unexpected breaking of some portion of the internal structure of the body, even without any external happening of an accidental nature, is to be regarded as an accidental injury under statutes similar to the Ohio statute, and it is said: " 'This is true notwithstanding the workman may have been suffering from a pre-existing infirmity which constituted a predisposing cause of such disablement. It is said, in this connection, that an internal injury which is sudden, unusual, and unexpected is none the less accidental because its external cause is part of the victim's *ordinary work*' " (Emphasis ours.)

We deduce from the many decisions of the Supreme Court that if an employee, or his dependents in event of death, prove that he has received an injury, as distinguished from a disease, in the course of and arising directly out of his employment, a case for compensation has been established and the fact that the employee brought to his employment an impaired or diseased body, upon which the exertions of his employment had a greater effect than upon a healthy person,

does not negative the right provided the cause of his death at the particular time rather than at some later time was something arising out of his employment.

We turn now to a consideration of the evidence in this case in the light of this state of the law.

Berry Williams had been employed by The Sorg Paper Company for 20 years. He was 44 years of age. In 1946 he became afflicted with heart disease, accompanied with hypertension and probable coronary sclerosis. From that time on until his death he continued to consult the family physician, who cautioned him not to exert himself unduly. He took medicine to improve his condition from time to time and seemed to improve, at least, he did not appear to get worse.

In the beginning, his work consisted in moving rolls of paper from one place to another in the factory. At some time after he developed this heart condition, he was charged with the duty of seeing that the rolls were moved, and, by implication, it appears that his duty did not require him to do any part of the physical act involved in the moving, although it is clear that he did at times move or assist in moving the rolls. These rolls weighed from 1,200 to 1,500 pounds and ordinarily had to be moved about 35 feet. They were either rolled on the floor or transported on a small three-wheeled truck. No matter what method was used it could not be done without exerting considerable force. The evidence shows that in the usual course, two employees were assigned to do this work, and that they combined their strength in moving the rolls.

There is substantial evidence to show that on the day of his death, Berry Williams proceeded to move these rolls personally without any assistance. There is evidence also that because of obstructions in the aisles he was unable to move them by the direct route

35 feet long, but was required to take a circuitous route from 200 to 250 feet in length. Williams continued to move these rolls unassisted during the morning and after the noon stop resumed his work. There is testimony by a fellow employee that the effort seemed to have an undue effect upon him. At any rate while on one of these trips moving these rolls he stopped to talk to a fellow employee and while doing so collapsed and died almost at once. This fellow workman noticed nothing unusual about his appearance or behavior until his collapse.

Each side introduced the testimony of two physicians who gave opinions as experts in answer to hypothetical questions. The hypothetical questions submitted to the physicians called by the defendant did not include the departure from the usual course of the work on the day Williams died. They testified that his death did not arise out of his employment, although they modified their opinions when the unusual features were presented to them on cross-examination.

The physicians called by the plaintiff gave it as their opinion that Williams' death was caused by the rupture or cracking of a blood vessel, which in turn caused an occlusion or blocking of the blood.

It is the contention of the defendant that there is no substantial evidence of any injury in the course of and arising out of the employment. Defendant contends that his death resulted from the disease from which he had suffered since 1946 and not from any injury. They further interpret the Supreme Court decisions to which we have referred and others which they have cited and commented upon as requiring proof of some unforeseen occurrence other than the accident from which the injury results interrupting the usual course of the work as a condition of compensability.

We cannot adopt these contentions. However, if we were required to conclude that it was essential to the plaintiff's case that Williams' death did not result from the usual course of the employment, we would hold and do hold that there is substantial evidence that his death resulted from an internal injury caused by over exertion in moving these heavy rolls without assistance for an unusual distance.

However, we think it is clear that Williams suffered an internal injury which directly caused his death, that this internal injury was received in the course of his employment, and directly arose out of his employment, and that whether he was engaged in his usual labor at the time or was subjected to unusual conditions is immaterial, except so far as the unusual conditions might have greater probative value on the issue of whether any injury had been received in the course of his employment, or whether he had not died from disease or other causes having no relation to his employment.

We find no prejudicial error in the record, and the judgment is affirmed.

*Judgment affirmed.*

Ross and HILDEBRANT, JJ., concur.