Long, Appellee, *v.* The Industrial Commission of Ohio, Appellant.*

(No. 8343—Decided December 16, 1957.)

*Messrs. Hoover, Beall, Whitman & Eichel,* for appellee.
*Mr. William Saxbe,* attorney general, and *Mr. Myron S. Rudd,* for appellant.

Matthews, J.  This is an appeal from a judgment upon a verdict rendered at a second trial, finding the plaintiff, widow of a deceased employee, entitled to participate in the Workmen's Compensation Fund.  The first jury was unable to agree and was discharged.

Fred C. Long, a man 67 years old, had been employed as a stationary fireman by The Stearns & Foster Company for nine years preceding his death on March 18, 1953.  As early as 1940 he had been hospitalized for a chronic ulcer condition, but the examination at that time did not disclose any other ailment.  He was hospitalized again in 1951 for the same ailment, and, at that time, the examination disclosed a condition described as "mild hyperthropic spurring of degenerative arthritis of the lumbar spine."

The periods of his hospitalization were not of long duration, and except for those absences he continued to perform his duties as a stationary engineer for The Stearns & Foster Company until December 1952, when the incident occurred upon which the plaintiff predicates her claim for compensation.  There was only

---

*Motion to certify the record overruled, April 23, 1958.

one witness, a coengineer, to this occurrence. We quote the material parts of his testimony:

"Q. Directing your attention to approximately December 13, 1952, will you describe what you were doing that day, what Fred Long was doing that day, and what, if anything happened as you saw it? A. We, we were around the area—we have a bench where firemen, if he isn't busy, sits on that bench and I was in an area—I don't know what I was doing, maybe resting at the time, and he went over to empty this bucket of oil and water, and there is a line shaft runs out about four feet from the ground and this pail is set back in under that line shaft about 18 inches, and he bent over to pull that pail out that contained oil and water and, well, the next thing I knew, I saw him reaching for his back and groaning and I helped him over to the bench and I believe it was on a Saturday so he couldn't go to the dispensary to make out a report.

"Mr. Rudd: Move to strike the last.

"The Court: The part about going to the dispensary you are instructed to disregard.

"Q. Then what did he do immediately after you took him over to the bench? A. I think he went on home.

"Q. Was that before his regular quitting time? A. Yes.

"Q. What time of the day was that? A. Well, I would say around 1:00 o'clock, right around there somewhere.

"Q. How long was your regular shift supposed to last that day? A. 2:30.

"Q. Can you tell us how heavy this pail of oil and water was? A. It would go 20, 30 pounds.

"Q. Can you describe a little bit exactly how he had to stoop over to lift it or get to it? Was it easy or hard? A. It was hard. The line was up about here and had to push over there to get it. He was a taller man than I am, he had to bend over pretty well to get it. You have to slide it out, you cannot pick it up like that, get it out where you can get ahold of it. Maybe he might have grabbed it and tried to lift on it.

"Mr. Rudd: Move to strike the last portion.

"The Court: The last part from 'He might have grabbed it and tried to lift on it,' may be stricken and you are instructed to disregard it."

He returned to work in about a month in apparent good condition, and, then, on March 13, 1953, he was sent to the hospital because of an occurrence described by this same witness in this language:

"Q. What happened on that day, sir? A. Well, it was early in the morning. We were just—the load was just getting ready to come on the boilers. I had been talking and joking with him, and he got up to speed up his fan engine, and he took about three steps and put his hand up here and said, 'Oh, my head,' and held the back of his head. He did not look right at me. I made him sit on the bench, called the boss, and I took over the firing job and we laid him on the bench and then we called the dispensary, I believe, and then they came with the ambulance and took him out.

"Q. Was that the last day he worked there? A. Yes."

He died one week later. The cause of death was diagnosed as "subarachnoid hemorrhage."

It will be observed that this witness made no direct statement that he saw Long in the act of lifting the bucket. He did see him in a stooping position, and the hypothesis submitted to the expert did not include a lifting of the bucket. However, there is no doubt that it was a part of his usual duty to empty this bucket on occasions. We think it is a fair inference that it was his intention to empty the bucket when he complained of the pain in his back.

As will be observed, the disability which Long suffered on December 13 was not caused by external means resulting in a sudden mishap occurring by chance in the course of the employment, unless the stooping and possible lifting of the bucket at that particular time which was a part of, but not a constantly recurring part of his duties, can be so regarded.

In the case of *Williams* v. *Industrial Commission,* 95 Ohio App., 275, 119 N. E. (2d), 126, we were presented with a record somewhat similar to that in this case. By an examination of our opinion in that case it will appear that we thought that if an injury or death occurred, without intent, in the course of the employment, and arose directly out of the employment, it was compensable without proof that the means or cause was accidental. However, since that case was decided, the Supreme

Court has decided the case of *Dripps* v. *Industrial Commission*, 165 Ohio St., 407, 135 N. E. (2d), 873, in which it held, as stated in the second paragraph of the syllabus, that:

"The fact that a workman is injured by exerting more effort or being subjected to a greater strain than is customary in the performance of his work is not in and of itself sufficient to entitle such workman to participate in the State Insurance Fund; and before such participation may be had it must appear that such increased effort or strain was occasioned by some sudden mishap or unusual event."

We can find no distinction between the material facts in the *Dripps case* and the facts in the case at bar. We are of the opinion that the *Dripps case* rules this case. We, therefore, reverse the judgment, and enter final judgment for the defendant, appellant herein.

*Judgment reversed.*

HILDEBRANDT, P. J., and LONG, J., concur.