*6
 
 Stewart, J.
 

 The Court of Appeals found the Court of Common Pleas in error in sustaining an objection to the testimony of the expert medical witness to the general effect that there was a causal relationship by way of acceleration and aggravation between the work of the decedent and his death, as well as the testimony of the reasons of the medical expert for his opinion. The Court of Appeals held that, with the inclusion of ’proffered testimony, there was ample evidence of probative value from which an inference could be drawn by the jury that the death of decedent was due to an accidental injury in the course of and arising out of his employment.
 

 The dissenting judge was of the opinion that decedent did not suffer an accidental injury while acting in the course and scope of his employment, which, in the slightest degree, could be said to have been a contributing cause of his death; that there was no evidence of a traumatic injury; that, this being so, a hypothetical question asked of the medical expert could have no significance in the case; and that the refusal to permit the witness to give his reasons for the answeis, while erroneous, did not prejudice plaintiff’s rights.
 

 If there were any evidence that decedent suffered an accidental injury which caused his death, either directly or by aggravating and accelerating a previous condition, then plaintiff would be entitled to recover, but, if there was no such evidence then the action of the trial court in directing a verdict for defendant was correct, even though the court was in error in sustaining defendant’s objection to the testimony of the medical expert.
 

 The statement of the court in the case of
 
 Goodman
 
 v.
 
 Industrial Commission,
 
 135 Ohio St., 81, 82, 19 N. E. (2d), 508, quoted by Judge Turner at the beginning of his opinion in
 
 Cordray
 
 v.
 
 Industrial Commission,
 
 139
 
 *7
 
 Ohio St., 173, 175, 38 N. E. (2d), 1017, is significantly true. That statement is: “It hardly seems necessary to remark that in cases of this general type the peculiar facts of the individual case are largely controlling. ’ ’
 

 In the
 
 Goodman case,
 
 a 48-year-old baker, while engaged in his usual occupation shortly after he had commenced work, suffered an acute dilation of the heart from which he died on the same day. Since all the eyewitnesses testified that Goodman was at his bench, handling dough in the usual way and under the usual conditions, when he collapsed, and that he was not engaged in any extraordinary effort at the time, he did not suffer any compensable injury.
 

 The court there said:
 

 “Whatever the rule in other jurisdictions may be, the Supreme Court of Ohio, through a long line of decisions, has consistently defined the meaning of the term ‘injury,’ as used in the Constitution and statutes, to be physical or traumatic injuries accidental in their origin and cause; the result of a sudden happening at a particular time.”
 

 In the
 
 Cordray case,
 
 the first two paragraphs of the syllabus are as follows:
 

 “1. In an action by the dependents of a workman against the Industrial Commission in which no evidence is offered by claimants tending to establish that the workman’s death was the result of a sudden happening at a particular time causing a physical or traumatic injury accidental in origin and cause, it is error for the trial court to overrule a motion by the commission for a directed verdict in its favor.
 

 “2. Where the plaintiff’s evidence discloses
 
 only
 
 that a workman while engaged in performing the usual duties for which he was employed, in the usual and regular way without any extraordinary effort, suffered a cerebral hemorrhage, no compensable injury
 
 *8
 
 is shown. The occurrence of a cerebral hemorrhage is not of itself proof that it resulted from a compensable injury.”
 

 Section 35, Article II of the Constitution of Ohio, differentiates between injuries and occupational diseases. The word, “accident,” or, “accidental,” is not used in connection with the word, “injury,” in the constitutional provision, and yet, since injury and occupational disease are separated, the tenor of all the decisions of this court is that an injury to be compensable under the Constitution and statutes must be one that arises from an accident.
 

 In the present case there was not a scintilla of evidence that decedent had done or was doing a single thing on the job, which he was performing, which was in any way unusual or different from what he had always done in his work, or from what the three men who were working with and near him had done in their work. None of the other three men saw decedent perform his job in.any way different from the manner in which they had performed their similar jobs and from the manner in which it was usual, convenient and necessary to do the work. As decedent’s partner on the job, Roy Weede, testified:
 

 “Q. Now then, in order to screw the bolt into the floor, how did you observe Mr. Nelson performing that just before — or did you observe whether or not Mr. Nelson began to do the work required to screw the bolt into the floor? A. No, I wouldn’t give it any thought. We were both doing the same kind of work, and while I was doing mine he would be doing his.
 

 “Q. Well, did you get a chance to look over and see what he was doing at any time while that work was being done? A. Well, I had a chance but I wouldn’t know as I looked at him; I wouldn’t knoAv if I even looked at him while we were working.
 

 
 *9
 
 “Q. What was the first thing that attracted your attention to Mr. Nelson? A. I think the fact that he didn’t answer. The men are always talking one way or the other, and as I remember, he didn’t answer me; he wasn’t paying any attention to what I was talking about.
 

 “Q. Then what did you do? A. I don’t recall whether I spoke to him. I looked over there and he wasn’t moving, but he was in the natural position that he would be for doing the work, and I only recall that I went to him and I saw that there was something wrong — he wasn’t moving or answering, and I called these other two boys.”
 

 It is true the medical expert proffered testimony that the crouched position in which decedent, was fastening the machine to the floor would compress the organs of the abdomen, interfere with breathing in the chest and raise the blood pressure, and an extra strain would be put on the heart and the circulatory system, and that with a general arteriosclerosis or genera] impairment of the blood vessels there would be a causal relationship due to such a strain. However, the position in which decedent was working was the ordinary one most convenient in doing the work, and was the one in which all his companions were doing their work.
 

 In every muscular movement there is stress and strain, but, unless there is something unusual or out of the ordinary in the manner of doing his work, which a person is either forced to undergo or undergoes voluntarily, his death is not compensable when he dies from a condition which has long been with him. It is common knowledge that, where physical conditions prevail as in the case of decedent, death from cerebral hemorrhage occurs to people at work, in their offices, on the street, at home or in bed.
 

 
 *10
 
 The decision of this court in the
 
 Cordray case, supra,
 
 was based on the law as it was before Section 1465-68, General Code, was amended, effective July 10, 1937, by the addition of the following paragraph:
 

 “The term ‘injury’ as used in this section and in the Workmen’s Compensation Act shall include any injury received in the course of, and arising out of, the injured employee’s employment.”
 

 The decision in the case of
 
 Malone
 
 v.
 
 Industrial Commission,
 
 140 Ohio St., 292, 43 N. E. (2d), 266, was based on the law as it existed after the amendment of Section 1465-68, General Code, effective July 10, 1937. The first three paragraphs of the syllabus in that case are as follows:
 

 “1. The term ‘injury’ as used in the Constitution and in Section 1465-68, General Code (117 Ohio Laws, 109), as amended effective July 10, 1937, comprehends a physical or traumatic damage or harm, accidental in its character in the sense of being the result of a sudden mishap occurring by chance, unexpectedly and not in the usual course of events, at a particular time and place.
 

 “2. When, in connection with an intentional act on the part of a workman which precedes an injury to him, something unforeseen, unexpected, and on usual occurs which produces the injury or from which the injury results, it is accidental in character and result.
 

 “3. When an employee, by reason of the activities, conditions and requirements of his employment, is subjected to a greater hazard than are the members of the genera] public, and he is accidentally injured thereby, a causal connection between the employment and his injury is established.”
 

 • In the
 
 Malone case,
 
 the question was whether heat prostration, suffered by a workman as a result of contact with artificial heat incident to his employment and causing his death, was a compensable injury. This
 
 *11
 
 court held that such an injury was compensable; that the heat condition was a hazard greater than that to which the general public was subjected; and that the claimant was accidentally injured thereby.
 

 Judge Hart, on page 300 of the opinion, said:
 

 “This court is still committed to the proposition that a compensable injury under the Workmen’s Compensation Act must be accidental and traumatic in character. This is necessary to differentiate compensable injury from disease which is not compensable unless caused by an injury, and except occupational diseases for which special provision has now been made under the law.”
 

 The
 
 Malone case
 
 was approved by this court in the case of
 
 Maynard
 
 v.
 
 B. F. Goodrich Co.,
 
 144 Ohio St., 22, 56 N. E. (2d), 195, the second paragraph of the syllabus thereof reading:
 

 “Pursuant to Section 1465-68, General Code, as amended (117 Ohio Laws, 109), by adding the provision that ‘the term “injury” * * * shall include any injury received in the course of, and arising out of, the injured employee’s employment,’ an injury to be compensable under the Workmen’s Compensation Act must have some causal connection with the employment and such connection does not exist unless the injury is accidental in character and result.
 
 (Malone
 
 v.
 
 Industrial Commission,
 
 140 Ohio St., 292, approved and followed.)”
 

 It is true that in the
 
 Maynard case,
 
 Maynard died as the result of an injury received from a sudden strain which, with subsequent connected complications, caused his death, but there was testimony in that case of his fellow workmen that they and Maynard had never handled a roll like the one which caused the injury, either during the shift on the night of the injury - or during the previous two months they had worked together.
 

 
 *12
 
 This court very recently held that ptomaine poisoning, unexpectedly experienced by a workman fi’om eating tainted food on a particular occasion as an incident of his employment, constitutéd an injury within the meaning of the Workmen’s Compensation Act.
 
 Sebek
 
 v.
 
 Cleveland Graphite Bronze Co.,
 
 148 Ohio St., (593, 76 N. E. (2d), 892.
 

 The second paragraph of the syllabus in the
 
 Sebek case
 
 is as follows:
 

 “An injury occurs in the course of and arises out of employment within the contemplation of the' Ohio Workmen’s Compensation Act, if the injury folloAved as a natural incident of the work and as a result of exposure occasioned by the nature, conditions or surroundings of the employment.”
 

 On page 696 of the opinion, Judge Zimmerman quoted with approval the definition of injury contained in the first paragraph of the syllabus in the
 
 Malone case
 
 and said:
 

 “This court has held in a number of cases that bodily harm, which occurs to a workman by the sudden, unexpected and unforeseen inhalation of noxious or poisonous gases or fumes, or by contact with a poisonous substance, constitutes a compensable injury within the meaning of the provisions of the Workmen’s Compénsation Act of Ohio. In such a situation, compensation is awarded on the basis of the injury and not for the disability or disease which may be attributable thereto.”
 

 Thus it is apparent that in order to have a compensable injury a person need not be violently struck by an outside agency, but such an injury may arise through an external means such as extreme heat, an extraordinary strain from overexertion or a noxious fume or poison, but this court has not held, even since the amendment to the statute to the effect that “in
 
 *13
 
 jury” means “any injury,” that the sudden death of a workman, while working in the course of his employment, of itself proves a compensable injury. Although a liberal construction is justly required in the' interpretation of the Workmen’s Compensation Act,, in order to have death compensation there still must, be some evidence that the death of the workman was caused or contributed to by some act which was different in kind or in exertion from the regular, ordinary work performed by the workman and those engaged in like occupation.
 

 The record in the instant case is absolutely devoid of any evidence of accident, under the most liberal construction of that term, which directly caused or contributed to decedent’s death. All the proffered testimony of the medical expert was based upon a position of working by decedent, which • he and his working companions were using and found most convenient to use in the performance of their tasks.
 

 In view of our conclusions, the judgment of the Court of Appeals is reversed and that of the Court of Common Pleas affirmed.
 

 Judgment
 
 reversed.
 

 Weygandt, C. J., Turner, Matthias, Hart,, Zimmerman and Sohngen, JJ., concur.