LAKATOS, APPELLANT, *v.* INDUSTRIAL COMMISSION OF OF OHIO, APPELLEE.

(No. 4648—Decided November 17, 1952.)

*Mr. Samuel Z. Kaplan* and *Mr. Harry P. Hood,* for appellant.

*Mr. C. William O'Neill,* attorney general, *Mr. Chalmers P. Wylie* and *Mr. George H. Fell,* for appellee.

Fess, J. This is an appeal on questions of law from a judgment for the defendant, entered notwithstanding a verdict in favor of the plaintiff. Plaintiff's decedent had suffered from an asthmatic condition for some three or four years prior to his death. In January 1945 he was operated on for inguinal hernia and appendicitis. Upon examination of the plaintiff's decedent on April 6, 1945, the physician reported that he was 58 years old; that he weighed 140 pounds; that his heart and lungs were healthy; and that he was in condition for work.

Plaintiff's decedent had been employed by the Libbey-Owens-Ford Glass Company from April 9 to May 1, 1945. He first worked on an individual machine where he remained several days while learning the operation sufficiently to be assigned to the production line. He then worked on a wire brushing machine for about a week. He complained to his foreman that the job was too hard and too fast for him. Other employees complained also that that job was too fast and too dirty for them. Plaintiff's decedent was then transferred to the sand blast operation, which was an easier job on the conveyor line. On or about April 23, he complained that he did not feel well and asked

to go home. He looked pale, tired, and haggard, and appeared to be sick. He went home where his wife observed that he was very weak and pale, rested for a long while before he cleaned up, did not eat much dinner, and retired at 9 p. m. He remained at home for three or four days and then went back to work for a couple of days. On May 1 he went to work but could not get started and returned home. He did not return to work again prior to his death.

On May 7, 1945, he consulted a physician. Although he gave no history of occupational difficulty, he complained of weakness, lack of appetite and vomiting. X-rays disclosed a duodenal ulcer and asthma. X-rays taken on July 9, 1945, disclosed considerable increase on both sides of the chest, with some nodulation present. Sputum tests were negative. On the day prior to his death, his physician found him sitting up in bed, short of breath and with his pulse weak but rapid. Digitalis was prescribed. The certificate of his death, which occurred on January 21, 1946, gave as the immediate cause thereof ''chronic myocarditis of two weeks' duration, due to asthma of three or four years duration.'' Plaintiff's evidence tended to show that the decedent was subjected to over-exertion and strain on the job. A fellow workman said that while decedent was on the line ''he was leaving too much glass for the backman go by and they put him in the back there, and so the guys would holler at him and he tried to keep up and he couldn't do it no more no matter how he tried.'' It is apparent that this testimony related to the week during which the decedent was engaged in the brushing operation. The expert medical witness for plaintiff testified, in answer to a hypothetical question, that there was a causal relationship between the incident described on April 23, 1945 (when decedent was on the sand-blasting operation), and the resultant death on January 21, 1946, on the premise that

the facts "would indicate that the decedent was subjected to industrial strain because of the job that was too hard and too fast for him, with ensuing aggravation of this previous asthma, and subsequent development of myocarditis, due to this aggravation and subsequent death."

The evidence fails wholly to disclose any injury accidental in origin sustained during the employment. But does the evidence disclose an injury accidental in character and result arising because the job was too difficult for the decedent?

By the weight of authority throughout the United States, in order to recover, a claimant must suffer either a traumatic injury in the course of his employment or the sudden and unexpected breaking of the internal organs of his body or the failure of some essential function, brought about by his exertions while engaged in his work. The former is accidental in origin, and the latter is accidental in character and result. But it is the sudden and unexpected stroke or heart failure which gives the occurrence the attribute of being accidental in character and result. Even though the workman may have been suffering from a pre-existing disease or infirmity, which constitutes a predisposing cause, an internal injury which is sudden, unusual, and unexpected is nonetheless accidental in character because its external cause is part of the victim's ordinary work. 58 American Jurisprudence, 756, Section 255.

In Ohio, prior to the redefinition of the word, "injury," in 1937 (117 Ohio Laws, 109), the term comprehended a physical or traumatic injury, accidental in its origin and cause; the result of a sudden happening occurring by chance, unexpectedly and not in the usual course of events at the time. But even prior to the 1937 amendment, some Ohio courts in interpreting the phrase, "accidental in its origin and cause," con-

strued it to include injuries accidental in character and result. The Supreme Court had recognized as compensable injuries accidental in result where no accidental circumstance preceded or caused them. *Malone* v. *Industrial Commission,* 140 Ohio St., 292, 297 to 299, 43 N. E. (2d), 266. In the *Malone case* the court redefined the term as follows:

"The term 'injury' as used in the Constitution and in Section 1465-68, General Code (117 Ohio Laws, 109), as amended effective July 10, 1937, comprehends a physical or traumatic damage or harm, accidental in its character in the sense of being the result of a sudden mishap occurring by chance, unexpectedly and not in the usual course of events, at a particular time and place."

However, in the *Malone case* the court went on to say, in the third paragraph of the syllabus, the following:

"When an employee, by reason of the activities, conditions and requirements of his employment, is subjected to a greater hazard than are the members of the general public, and he is accidentally injured thereby, a causal connection between the employment and his injury is established."

Under the third branch of the syllabus, it may well be contended that any employee engaged in a particular occupation is subjected to a greater hazard than are the members of the general public and that if he suffers any disability accidental in character and result, a causal connection between his disability and his injury is established. The language employed in the syllabus necessarily must be interpreted in the light of the facts in the case. Malone suffered an attack of acute indigestion induced by excessive heat in the foundry where he was working at his regular normal employment, and died a few hours thereafter. He was engaged in his usual employment without any ex-

traordinary stress or strain as compared to his normal working conditions. The "sudden mishap occurring by chance, unexpectedly and not in the usual course of events" was the sudden severe attack of indigestion induced by the extreme heat incident to the normal activities of his employment.

In its opinion in *Nelson* v. *Industrial Commission,* 150 Ohio St., 1, 80 N. E. (2d), 430, the Supreme Court said:

"Although a liberal construction is justly required in the interpretation of the Workmen's Compensation Act, in order to have death compensation there still must be some evidence that the death of the workman was caused or contributed to by some act *which was different in kind or in exertion from the regular, ordinary work performed by the workman and those engaged in like occupation.*" (Emphasis added.)

In *Gerich* v. *Republic Steel Corp.,* 153 Ohio St., 463, 92 N. E. (2d), 393, the Supreme Court, in the first and third paragraphs of the syllabus, apparently adopted the language referred to in the opinion in the *Nelson case:*

"1. Under the Ohio Workmen's Compensation Act, to entitle a workman to compensation for injury, he must suffer a traumatic injury in the course of and arising out of his employment other than an injury which may occur in the regular course of nature from the usual and normal activities of his employment."

"3. Evidence which shows simply that an injury either may have been the result of an accident in the course of and arising out of employment or may have been suffered in the course of employment in the regular course of nature in the usual and normal activities of the employment is not evidence to support a workmen's compensation claim."

In *Eggers* v. *Industrial Commission,* 157 Ohio St., 70, 104 N. E. (2d), 681, the employee, while on duty,

suddenly fell to the floor and suffered a cut on the side of his head, but there was no evidence as to where he was standing or as to the nature of his work or that any incident connected with his employment caused him to fall or that he had experienced any unusual strain or was subjected to any unusual condition, and recovery was denied. The court distinguished the case of *Industrial Commission* v. *Nelson,* 127 Ohio St., 41, 186 N. E., 735, where the claimant was seized with an epileptic fit, causing him to fall, and where, in falling, his head struck a machine at which he was then working. It will be noted that Eggers' fall while on duty was an unusual event just as in the case of Nelson, but in Nelson's case, he having struck the machine, there was a traumatic injury arising out of his employment.

Although the third paragraph of the syllabus in the *Malone case* could be interpreted to include any injury arising out of employment, induced by exertion normal to the employment, if the employee is subjected to a greater hazard than are members of the general public, it is concluded that the evidence to support recovery of compensation must disclose "a physical or traumatic damage or harm, accidental in its character in the sense of being the result of a sudden mishap occurring by chance, unexpectedly and not in the usual course of events, at a particular time and place." Such evidence must disclose also an injury in the course of and arising out of the employment "*other* than an injury which may occur in the regular course of nature from the usual and normal activities of his employment."

Applying these principles to the instant case, the plaintiff's decedent merely became ill while engaged in the usual and normal activities of his employment. The evidence fails to disclose any untoward or sudden mishap of a traumatic nature, accidental in character and

result, to afford a predicate for the medical testimony that, incident to his employment, his asthmatic condition was aggravated, which in turn resulted in a heart condition causing his death.

*Judgment affirmed.*

SAVORD, J., concurs.

CONN, J., dissenting.   The trial court determined that the defendant was entitled to a judgment in its favor, although the jury had returned a verdict for plaintiff.   Judgment was entered for the defendant pursuant to Section 11601, General Code, the court having found, as appears by its judgment entry, that "upon the evidence adduced, the verdict of the jury was contrary to law, and the defendant is entitled in law to a judgment in its favor."

The verdict in favor of plaintiff was returned in the second trial of this cause.   Upon the first trial, the jury disagreed and was discharged.

A motion for judgment notwithstanding the verdict presents a question of law, and plaintiff is entitled to the most favorable construction of the pleadings and the evidence.   Under the provisions of the statute (Section 11601, General Code), the court is not permitted to weigh the evidence but is required to consider all the evidence which was submitted to the jury. Thereupon, if upon the application of the rule of "reasonable minds" it appears that the evidence has no probative value, a judgment can be entered for defendant.

It is a well settled rule that where the record discloses a conflict in the evidence, and where there is substantial evidence of probative value adduced on any material issue, including proximate cause, a jury question is presented.

There appears to be two aspects of proximate cause

when an issue arises in a workmen's compensation case. First, the status or relationship of employer and employee which discloses a causal connection between the character of the work assigned to the employee and his subsequent injury so that it can be said that the alleged injury falls within the statutory definition, as outlined in Section 1465-68, General Code, and, second, credible evidence that the acceleration of the death of the employee, as asserted by plaintiff in the instant case, was the proximate result of such injury so sustained.

In the fact statement in the majority opinion by Judge Fess, the material facts are carefully outlined. The issue of what constitutes an "injury" and the proximate cause thereof can not be adjudged apart from these facts, such as the age and asthmatic physical condition of decedent, his unfamiliarity with the work assigned to him, the strain imposed by reason of dust, the high speed of the conveyor line, the attitude of youthful fellow employees, and the short duration of his employment and its immediate harmful effect on his health. It may be inferred that the fact situation presented to decedent when he undertook this work, respecting the character of the employment and its harmful result, was unanticipated and unexpected.

In *Malone* v. *Industrial Commission,* 140 Ohio St., 292, 43 N. E. (2d), 266, cited in the majority opinion, the court restated with approval and perhaps broadened the rule that while the alleged injury must be shown to have a causal connection with the employment, such relationship may arise either through its activities, its conditions or its environments.

With respect to the issue of causal relationship between the alleged injury and subsequent death, the medical evidence submitted was in direct conflict. This conflicting evidence was substantial and of probative

value. Under the rule, the issue of proximate causal relationship was one of fact rather than law.

The legal aspects of plaintiff's claim, in relation to its compensable character, are not wholly within the area of certainty. However, on the whole record and applying the rule of liberal construction, I am of the opinion that a jury issue was raised as to the legal status of plaintiff's claim—that is—as to the "injury," its unexpected or accidental character, and its causal relationship.

On this premise, there being no claim of prejudicial error in the submission of issues of fact to the jury, the motion for judgment should have been overruled.