Charles **TETI**, Plaintiff-Appellant,

v.

The **FIRESTONE TIRE AND RUBBER COMPANY**, Defendant-Appellee.

**No. 17748.**

United States Court of Appeals
Sixth Circuit.

Decided April 4, 1968.

Stanley M. Fisher, and Lawrence S. Levy, Cleveland, Ohio (Fuerst, Fisher, Levy & Goulder, Cleveland, Ohio, on the brief), for appellant.

Patrick F. McCartan, Cleveland, Ohio (John L. Strauch, Jones, Day, Cockley & Reavis, Cleveland, Ohio, on the brief), for appellee.

Before PECK and COMBS, Circuit Judges, and CECIL, Senior Circuit Judge.

CECIL, Senior Circuit Judge.

This is an appeal from an order of the United States District Court for the Northern District of Ohio, Eastern Division, granting defendant-appellee's motion for a directed verdict at the close of all the evidence in the case. Jurisdiction is based upon diversity of citizenship. Charles Teti, plaintiff, is a resident of Renovo, Pennsylvania, and The Firestone Tire and Rubber Company, defendant, is incorporated under the laws of Ohio and has its principal place of business in Akron, Ohio. The parties will hereafter be referred to as plaintiff and defendant.

The action was begun in the District Court to recover damages for injuries alleged to have been sustained on April 8, 1963, through the negligence of the defendant when the plaintiff caught his heel on some loose floor tile in defendant's retail store in Lockhaven, Pennsylvania. As a result of this alleged accident, plaintiff claimed that he was "caused to suffer injuries to the muscles, nerves, ligaments, soft tissues and other parts of his back; plaintiff was further caused to suffer a severe and permanent aggravation of a pre-existing back condition, so that plaintiff experienced extremely intense and excruciating pain and suffering."

On April 8, 1963, plaintiff was forty-nine years old. His prior medical history shows that he had serious back trouble. In 1948, while working for the Pennsylvania Railroad Company, plaintiff suffered a severe case of lead poisoning. In November, 1953, while still in the employ of the railroad, plaintiff injured his low back, necessitating surgery in May, 1954. Approximately, one week after returning to work in January, 1955, plaintiff injured his low back, again requiring surgery in September, 1955. Being unable to return to work on the railroad, in 1957 he applied for and received a total disability pension from the United States Railroad Retirement Board. Surgery was again performed on plaintiff's low back following an occurrence wherein plaintiff attempted to force a seven-foot radiator cover through a cellar door. Between this third back operation and the alleged accident of April 8, 1963, plaintiff was able to and did perform light work. He worked as a sort of handyman at his fraternal lodge, where he cut grass, painted, and moved cases of beverages and other supplies. He also worked in the parts department of a local garage where he carried articles weighing up to fifty pounds. He did various carpentry jobs, installed ceilings and floors, and worked on other miscellaneous projects.

Immediately after the occurrence in the Lockhaven store, plaintiff testified that he experienced sharp pain down his left leg, and shortly thereafter pain in his low back. He was treated by his local doctor that afternoon. Finding no relief, plaintiff was admitted to the hospital on April 23, 1963, and was operated

on on April 27, 1963. Further surgery was performed on July 15, 1964. Since April 8, 1963, plaintiff stated that he has been unable to work at any of his previous jobs. Plaintiff testified that he walks with a limp, cannot bend or stoop, finds it painful and difficult to walk any distances, cannot negotiate stairs, and suffers from increased pain. He says that he has his "good and bad" days.

At the trial, plaintiff offered the testimony of two doctors to establish the causal relationship between the accident and plaintiff's present condition. At the close of plaintiff's case, defendant moved for a directed verdict. The trial judge reserved ruling until after defendant had presented its evidence. After all the evidence was presented, counsel for defendant renewed this motion for a directed verdict, but stated that he had no objection to submitting the case to the jury. The trial judge granted defendant's motion. The trial judge held that even if you assume negligence on the part of defendant, the case could not be submitted to the jury because there was no evidence from which the jury could determine that plaintiff's prior condition was aggravated by the accident, or that there was a direct and proximate causal relationship between the accident and plaintiff's present condition or the two operations he underwent in 1963 and 1964.

> "I can't send the case to the jury, because there is absolutely not a shred, not an iota, not a word of evidence here by which you would have any right to determine, nor I, that all these things that happened to this man over a 10-year period can be charged against the company that owned the store where he walked in and turned on his ankle."

Plaintiff appeals from this ruling, claiming that a jury question was presented. He further asserts that the trial judge committed reversible error in sustaining objections to questions his attorney asked of both expert and lay witnesses and that the conduct of the trial judge was such as to deny him a fair trial.

Upon oral argument a question arose as to whether certain hospital records proffered by plaintiff were actually introduced into evidence. These are plaintiff's exhibit 20, the records of Hamot Hospital in Erie, Pennsylvania, where plaintiff was a patient in 1954 and 1955, and plaintiff's exhibit 21, the records of Geisinger Memorial Hospital, in Danville, Pennsylvania, where surgery was performed on plaintiff in 1959, 1963 and 1964. The pre-trial memoranda indicate that counsel agreed to the authenticity of all medical records, including all hospital reports, and that the plaintiff would produce "certain medical records". The record indicates that when plaintiff's exhibit 20 was marked for identification, the following colloquy took place:

> "MR. LEVY (for plaintiff): Let the record further indicate that the parties have stipulated that these records may go into evidence in this case.

> "MR. McCARTAN (for defendant): If they are complete, your Honor; and I will review them at the recess.

> "THE COURT: All right."

After plaintiff's exhibit 21 was marked for identification, plaintiff's counsel stated, "It has also been stipulated by the parties that these records may go into evidence." Neither the defense nor the trial judge responded to this statement. During the direct-examination of plaintiff's medical expert, Dr. Rosenberg, plaintiff's counsel asked: "May I have the hospital records that have been introduced?" The witness was also asked a question about the operative record of April 27, 1963, "which has been admitted into evidence in this case." A hypothetical question asked by plaintiff's counsel made reference to the hospital records, "which have been admitted into evidence in this case." No comment or objection was tendered by either defense counsel or the judge to the effect that these records had not been received in evidence. Defense coun-

sel made many references to these very records on cross-examination of plaintiff's medical witnesses. For some unknown reason, at the close of his case, plaintiff offered his exhibits numbered 1 through 27 into evidence. Defendant's objection to this offer was sustained, except as to exhibits numbered 1, 17 and 22 through 27. Counsel for both parties assumed that these records were in evidence and based their examinations upon them. The trial judge raised no question about their use in direct and cross-examination. If the trial judge intended to rule out these hospital records by his ruling at the close of plaintiff's case, he was in error. Since these hospital records for all intents and purposes were in evidence throughout the trial, we will consider them as having been admitted for the purpose of this appeal.

The first question raised on this appeal is whether the trial judge erred in ordering a directed verdict in favor of defendant. In considering a motion of this nature, the trial judge must view the evidence in the light most favorable to the plaintiff and must make all permissible inferences in favor of the plaintiff. Domany v. Otis Elevator Company, 369 F.2d 604 (C.A.6), cert. den. 387 U.S. 942, 87 S.Ct. 2073, 18 L.Ed.2d 1327; Durham v. Warner Elevator Mfg. Co., 166 Ohio St. 31, 139 N.E.2d 10.

It is conceded that plaintiff has the burden of proving, by a preponderance of the evidence, that the accident of April 8, 1963, was the direct and probable cause of the injuries of which he complains including the alleged aggravation of his prior condition. Fox v. Industrial Commission, 162 Ohio St. 569, 125 N.E.2d 1; Brandt v. Mansfield Rapid Transit, 153 Ohio St. 429, 92 N.E.2d 1. Only when the evidence indicates a probability of a causal relationship, as opposed to mere supposition or possibility, may the issue be submitted to the jury. Furthermore, because of plaintiff's admitted prior history of back trouble, his claim of additional and aggravated injuries can only be proven by competent medical testimony. Fox

v. Industrial Commission, supra; Brecount v. Procter & Gamble Co., 166 Ohio St. 477, 144 N.E.2d 189.

Plaintiff called two doctors, Rosenberg and Wolkin, to testify as expert witnesses concerning the causal relationship between the occurrence in defendant's retail store and the subsequent surgeries and plaintiff's present condition. In answer to a lengthy hypothetical question "as to whether or not there is a probable causal connection between the incident of April 8, 1963, and the findings which you made in your three examinations and the present disability which you have found Mr. Teti to have today," Dr. Rosenberg answered, "I believe that there is a direct causal relationship between his current condition and the accident described to me in April of 1963." Plaintiff's counsel also asked Dr. Wolkin if he had an opinion "as to whether there is a direct and probable causal relationship between the incident of April 8, 1963 * * * and the surgery of April 27, 1963?" The following colloquy ensued:

"MR. McCARTAN: Objection.

"THE COURT: He may answer.

"A. Yes, sir, I have an opinion.

"Q. What is that opinion?

"A. I feel—

"THE COURT: Wait a minute. The opinion is that there is or there is not.

"A. Yes, sir, I feel there is a relationship.

"THE COURT: All right."

Dr. Wolkin further testified that he felt "there is some relationship between the accident of April, 1963 and both the necessity for surgery in '63 and '64." These statements represent the strongest and most affirmative evidence to prove the direct and probable causal relationship essential to plaintiff's case.

Defendant's position is that Dr. Rosenberg, upon cross-examination, retreated from his position taken on direct-examination and that his answers revealed an absence of an adequate basis

for his conclusions. See, Dillon v. Young, 6 Ohio St.2d 221, 217 N.E.2d 868; McKee v. Auto-Lite, 168 Ohio St. 77, 151 N.E.2d 540. Defendant places great emphasis on the following excerpt from the cross-examination of Dr. Rosenberg:

"Q. Now, Doctor, you are not saying, are you, that, in your opinion, there is a direct causal relationship between the incident of April 8, 1963 and the surgery in July of 1964?

"A. No, I'm not. And yet, on the other hand,—

"Q. Just tell me, Doctor, you are not saying that, is that right?

"A. No, I'm not.

"Q. And you cannot say, in fact, can you, Doctor, whether there is a direct causal relationship between the incident of April 8, 1963 and the surgery in July of 1964?

"A. No, not with any degree of certainty."

Keeping in mind that we must view the evidence most favorably toward plaintiff, we cannot say that the witness retreated from his testimony of a direct and probable causal relationship. Defendant further points to testimony on cross-examination to the effect that Dr. Rosenberg was not aware that some of plaintiff's present symptoms and complaints existed prior to April, 1963 and that such facts would have some bearing on the doctor's findings and conclusions. Dr. Rosenberg would not concede that in attempting to allocate the cause of plaintiff's present disability between his prior condition and the April, 1963 accident, he was dealing more in the range of possibility than probability. Dr. Rosenberg based this opinion on an assumption that what plaintiff told him concerning his physical condition prior to 1963 was true and that his clinical findings, based upon medical examination, indicated that plaintiff's disability was increased after 1963. Defendant argues that no probative value can be placed upon such testimony because based upon the subjective statements made to him by plaintiff. See, Nashville, C. & St. L. Ry. Co. v. York, 127 F.2d 606 (C.A.6). Such argument however ignores Dr. Rosenberg's statement that his conclusion concerning plaintiff's present condition was based on "objective findings principally." The defendant also relies on other portions of the record to support its position. Defendant's arguments primarily relate to the weight to be given to Dr. Rosenberg's testimony. Counsel's cross-examination was a skillful attempt to impeach the witness and destroy the strength of his testimony. However, a trial judge, in considering a motion for a directed verdict, must not usurp the function of a jury and determine the credibility of a witness or weigh the relative merits of a party's claim.

Defendant attacks the testimony of Dr. Wolkin, arguing that the doctor did not testify to a direct and probable relationship between the April, 1963 accident and the surgery of April, 1963 and July, 1964. It is true that the doctor stated that there is "a relationship" and "some relationship" but did not use the words "direct and probable", though contained in the question. The case of Senvisky v. Truscon, etc., Steel Corp., 168 Ohio St. 523, 156 N.E.2d 724, stands for the proposition that the necessary direct and probable causal relationship is not proven by statements by medical witnesses that there is "a causal relationship," even though given in answer to questions concerning "probable causal relationship." However, the case of Fox v. Industrial Commission, supra, holds that such evidence is "relevant and admissible if it tends to prove a certain element of an ultimate fact" even though standing alone it does not present a jury question. Defendant also points out that Dr. Wolkin was apparently under some misconception concerning the operative procedures performed prior to 1963.

This is a close question but viewing the record and evidence most favorably to the plaintiff, we cannot say that reasonable minds could only come to the one conclusion that there was no causal

relationship between the April, 1963 accident and plaintiff's subsequent surgeries and present physical condition. The issue should have been submitted to the jury upon proper instructions.

█ Inasmuch as this case will have to be remanded for a new trial, we feel it would be helpful to consider some of the other objections raised by defendant which may arise again. Plaintiff-appellant asserts that the trial judge erred in refusing to permit his witnesses to answer questions asked of them. Both Drs. Rosenberg and Wolkin were asked to state the basis for their opinions concerning the causal relationship to which they testified. The trial judge sustained defense counsel's objection to these questions. The Ohio Supreme Court in Fox v. Industrial Commission, supra, syllabus No. 3, stated:

"Where a medical expert witness answers a hypothetical question based upon testimony properly admitted, it is error to exclude the testimony of such witness as to the reasons for his answer."

See also, Nelson v. Indus. Comm., 150 Ohio St. 1, 80 N.E.2d 430.

█ Another question raised on this appeal relates to the permissive range of questions that could be asked of plaintiff's expert medical witnesses. Defendant claims that the testimony of both doctors should have been limited because they were not attending or treating physicians but were consulted to enable them to testify at the trial. Nashville, C. & St. L. Ry. Co. v. York, supra, relied upon in support of this contention, is a FELA case which is governed exclusively by federal law. This being a diversity case we are bound to apply state law. Ohio does place some limitation on the testimony of a medical witness who was consulted merely for the purpose of testifying. Unlike an attending physician, he cannot express an opinion based in whole or in part upon the medical history furnished him by the patient. Pennsylvania Co. v. Files, 65 Ohio St. 403, 62 N.E. 1047. However this rule does not prevent a doctor from testifying to objective symptoms and conditions, nor from expressing an opinion based upon subjective statements of the patient if the record contains evidence which is substantially the same as that related to the doctor. City of Mingo Junction v. Birch, 52 Ohio App. 201, 3 N.E.2d 624. Inasmuch as the record does not indicate to what extent the trial judge relied on these principles in making his rulings below, we merely mention them as a guide to both the Court and counsel in the retrial of this case.

█ In the hypothetical questions asked each doctor, plaintiff's counsel asked the doctor to "assume * * * that the surgeries performed were as indicated in the hospital records which you have examined." Defendant claims that these questions were objectionable because "they incorporated by reference opinions relating to surgeries performed by other physicians and omitted any reference to significant neurological findings and complaints relating to plaintiff's preexisting condition." See, Zelenka v. Industrial Commission, 165 Ohio St. 587, 138 N.E.2d 667. In Zelenka the physician was asked to assume the truth of the information contained in the hospital records, which included daily progress reports of doctors and nurses, including their opinions as to diagnosis and condition of patient. The records were voluminous and contained complicated and conflicting opinions. However in this case, the question merely asks the witness to assume that the operations were performed as indicated by the records, and does not ask the witness to assume the truth of any other material contained in the records. Although the question might have been framed more artfully, it was not objectionable in the form asked.

█ Without going into detail concerning the numerous other rulings of the trial judge overruling and sustaining objections to questions asked, suffice it to say that Rule 43 of the F.R.Civ.P. envisions a greater leniency in permissi-

ble questioning than evidenced by the trial judge in this case. Although the regulation of the direct and cross-examination of witnesses is largely a matter that is left to the sound discretion of the trial judge, it should not be exercised in such a manner as to inhibit trial counsel from effectively presenting his case. Counsel should exercise reasoned judgment in framing questions, and the judge should not unduly restrict proper questioning:

In view of our conclusion reached in this case, it is unnecessary to consider plaintiff's third assignment of error.

The judgment of the trial court is reversed and the case is remanded for a new trial.