**Lake Erie Construction Co.**
**v.**
**Industrial Comm.**
*[Cite as 2 AOA 581]*

*Case No. 88AP-894*
*Franklin County, (10th)*
*Decided April 5, 1990*

R.C. 1.49
R.C. 4123.32

*Millisor & Nobil, Mr. John R. Slater, Mr. Keith Pryatel and Mr. Roger Sabo, for relator.*

*Mr. Anthony J. Celebrezze, Jr., Attorney General, and Mr. Jeffrey W. Clark, for respondent.*

BOWMAN, J.

This mandamus action was referred to Referee Marie Furjanic with full powers pursuant to Civ. R. 53 who rendered her report on July 27, 1989, containing findings of fact and conclusions of law with the recommendation that relator's request for a writ of mandamus be denied.

Relator asserted the following objection to the referee's report:

"The Referee Erred In Holding That The Transferee Of Whole Or Part Of A Business Necessarily Assumes The Transferor's Workers' Compensation Experience Rating."

Relator objection inaccurately summarizes the finding of the referee concerning whether or not relator was a successor in interest. One of the questions before the referee was whether the Industrial Commission's classification of relator as a successor in interest for the purpose of calculating experience ratings under R.C. 4123.32(D) was unlawful and contrary to the statute. The referee found that, under the circumstances, relator met the implicit definition of successor in interest under R.C 4123.32(D). R.C. 4123.32(D) provides the Industrial Commission with the discretion to require a successor in interest to assume the experience rating of the employer whose business he has succeeded to.

The facts in this case are not at issue. The issue to be decided is whether the referee correctly concluded that the Industrial Commission's treatment of relator as a successor in interest was supported by evidence in the record and therefore did not constitute an abuse of discretion.

Relator, Lake Erie Construction Company, is an Ohio corporation engaged in the business of specialty construction contracting including

the landscaping of highways and related construction projects.

Bleile Corporation was incorporated in 1957 and bid on and performed services upon construction contracts pertaining to guardrail construction, installation of signs, and miscellaneous landscape work around highways. On April 4, 1983, Bleile passed a corporate resolution to wind up its business affairs and discontinue construction bidding as of June 1, 1983.

The resolution also referred to an agreement between Bleile and Lake Erie. Lake Erie agreed to continue the employment of present Bleile employees, to assume various lease agreements of Bleile currently in force, to purchase inventory at a cost basis, and to purchase equipment at a mutually agreed upon price.

Bleile commenced work on its final construction project at a site located in Georgia on April 1, 1984. On April 23, 1984, five Bleile employees died in a plane crash while en route to the construction site in Georgia. Workers' compensation benefits claims for the five employees were filed and allowed.

Bleile sold its last vehicles and equipment to relator on April 8, 1985 and was dissolved by resolution approved on October 6, 1986.

The allowance of the workers' compensation claims for the five employees resulted in a substantial increase in Bleile's annual workers' compensation premium rates. After the dissolution and discontinuance of business of Bleile, the Bureau of Workers' Compensation determined that relator was the successor in interest to Bleile and combined the premium experience of relator and Bleile.

Relator protested the bureau's decision to the underwriting/auditing section of the bureau which affirmed the determination. Relator appealed this decision to the adjudicating committee of the bureau which affirmed the combined premium experience rating. Relator continued to appeal and took its appeal to the respondent, Industrial Commission, which affirmed the combined premium experience rating.

Relator then commenced the present action in mandamus alleging that the Industrial Commission's decision that the experience ratings should be combined was unlawful, arbitrary, unreasonable, and contrary to R.C. 4123.32(D) and Ohio Adm. Code 4121-7-02.

R.C. 4123.32 sets forth rules for administering the state insurance fund and provides, in part, as follows:

"The administrator of workers' compensation shall, subject to the approval of the workers' compensation board, adopt rules with respect to the collection, maintenance, and disbursements of the state insurance fund among which rules shall be the following:

"***

"(D) Such special rules as the administrator considers necessary to safeguard the fund and as are just in the circumstances, covering the rates to be applied where one employer takes over the occupation or industry of another or where an employer first makes application for state insurance, *and the commission may require that if any employer transfers his business in whole or in part or otherwise reorganizes such business, the successor in interest shall assume, in proportion to the extent of such transfer, as determined by the administrator, the employer's account and shall continue the payment of all contributions due under this chapter[.]*" (Emphasis added.)

Ohio Adm. Code 4121-7-02 addresses the basic or manual rate and provides, in part, as follows:

"(B) Succeeding employers--experience.

"***

"(3) Where a legal entity having an established coverage or having had experience in the most recent experience period wholly succeeds one or more legal entities having established coverage or having had experience in the most recent experience period and at least one of the entities involved has a merit rating experience, the experience of all the involved entities shall be combined to establish the rate of the successor."

As previously stated, the matter at dispute in this case is whether relator is a successor in interest to Bleile within the meaning of the statutory language involved.

In its objections, relator argues that not only does no reason exist for the court to distinguish between general corporate liability successorship principles and successorship principles for workers' compensation purposes, but it also contends that in ignoring the judicially developed common law, the referee employed an analysis prohibited by R.C. 1.49(D). R.C. 1.49 provides, in part, as follows:

"If a statute is ambiguous, the court, in determining the intention of the legislature, may consider among other matters:

"***

"(D) The common law or former statutory provisions, including laws upon the same or similar subjects[.]"

In her report, the referee concluded that relator met the implicit definition of successor in interest under R.C. 4123.32(D). This approach did not violate R.C. 1.49. Not only is it written in discretionary language, but it also does not apply unless a statute is ambiguous. Additionally, common law is not a mandatory consideration. Rather, it is a matter that may be considered along with additional pertinent concerns including the intent of the legislature.

Contrary to relator's stance that no "discernible reason" exists for distinguishing between general corporate liability successorship principles and successorship principles in the area of common law, valid reasons for this distinction do exist. Workers' compensation law is a unique area of law whose boundaries are defined by statute. It has its "own individual characteristics" and should be interpreted "in the light of its own purpose, provisions, and merit." Young, Ohio Workmen's Compensation Law, 1.

The purpose of the Workmen's Compensation Act is to protect the rights of the employee and the integrity of the State Insurance Fund. *Taylor* v. *Keller* (1966), 6 Ohio St. 2d 9, 13. Moreover, the Workmen's Compensation Act should be liberally interpreted. R.C. 4123.95; *Nelson* v. *Indus. Comm.* (1948), 150 Ohio St. 1.

Relator argues that absent a finding of a continuation of a corporate entity, there is no transfer of a business and no successor in interest for the purpose of R.C. 4123.32(D). Relator points out that the officers, directors, and stockholders of Bleile and relator are not the same. Additionally, relator did not agree to assume Bleile's liabilities. While these factors might be persuasive in another context, this court does not find them persuasive for the purposes of determining a successor in interest for workers' compensation law. The intertwined purpose of workers' compensation law is to protect employees and to insure the integrity of the State Insurance Fund. These interests militate in favor of a broad interpretation of "business." Turning to the nature of the business involved in this case, capital assets and employees are the main components of such a business. This is not a type of business that has ongoing clients or customers or a fixed definite place of business. Rather, it involves bidding on construction projects and then, after successfully bidding, completing the project and moving on to future projects. The Bleile did not pass on any ongoing projects is not determinative in this case.

Pointing to the undisputed facts that relator purchased substantially all the capital assets of Bleile and employed most of Bleile's former employees and that relator was in substantially the same business as Bleile, the referee correctly concluded that relator fell within the implicit definition of successor in interest under R.C. 4123.32(D).

Additionally, when Bleile and relator entered into their April 1983 agreement, Robert Bleile was on the Board of Directors of both companies, an officer in both companies, and a major shareholder in both companies. One year later, when five Bleile employees died in a plane crash, Robert Bleile was no longer officially associated with relator. However, David Bleile was a member of the Board of Directors of both companies in April 1984, and he was an officer and a shareholder of relator.

A final matter of note is the agreement between relator and Bleile to amend relator's profit sharing plan so that former Bleile employees would retain their eligibility and be able to participate in relator's profit sharing plan.

The interest of relator in not having to bear the increase in its experience rating due to Bleile's bad safety record does not outweigh the interest in maintaining the integrity of the insurance fund and of protecting employees. A purchasing company should take into consideration the possibility of having the selling corporation's experience rating factored in with theirs and provide for such a contingency in the purchase agreement.

Relator has failed to show that the Industrial Commission abused its discretion by determining that it was a successor in interest; evidence in the record does support the commission's determination.

The objection to the referee's report is overruled. The report and recommendation of the referee is adopted.

The writ of mandamus id denied.

*Writ denied.*

YOUNG, J., concurs.
HOFSTETTER, J., dissents.

HOFSTETTER, J., retired, of the Eleventh Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.

HOFSTETTER, J., dissenting:

I respectfully dissent from the majority opinion for the reason that I do not believe a mandamus action is appropriate under the facts of this case. Therefore, the action should be dismissed. This matter, in my opinion, should have been appealed to the common pleas court consistent with the relief sought in *Hiram House* v. *Indus. Comm.* (1987), 42 Ohio App. 3d 29. Mandamus proceedings to determine whether there has been an abuse of discretion as to factual matters are limited, in my opinion, to "extent of disability" situations.