772 F.2d 905
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
DEWEY BURPO AND BEVERLY BURPO, PLAINTIFFS-APPELLEES,
CORPORATE SERVICE, INC.; PORTEC, INC., PLAINTIFFS-INTERVENORS,
v.
ALGOMA STEEL CORPORATION, LTD., DEFENDANT/THIRD-PARTY APPELLANT,
COMMERCIAL WIRE ROPE AND SUPPLY COMPANY, INC., AND THE
CHESAPEAKE AND OHIO RAILWAY COMPANY, THIRD-PARTY
DEFENDANTS/APPELLEES.
 NO. 84-1142
 United States Court of Appeals, Sixth Circuit.
 8/29/85
 
 E.D.Mich.
 AFFIRMED IN PART AND VACATED IN PART
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN
 BEFORE: CONTIE and WELLFORD, Circuit Judges; and PHILLIPS*, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant Algoma Steel Corporation (Algoma), a Canadian corporation, appeals from a jury verdict of $303,000 in favor of plaintiffs' diversity claims for personal injuries and from the trial court's grant of summary judgment dismissing third-party co-defendants whom Algoma Steel impleaded for the purposes of contribution.
 
 
 2
 Plaintiff Burpo, an employee of the Michigan corporation, Portec, Inc., was injured on August 23, 1977, while unloading steel from a railway car. Defendant Algoma had loaded the steel on a railroad car owned by the Chesapeake and Ohio Railway Company (C & O), a Virginia corporation. During the unloading of the steel, a cable sling securing the steel broke. The cable was apparently manufactured by Commercial Wire Rope and Supply, Inc. (Wire and Supply), a Michigan corporation. The unloosed steel fell on plaintiff Burpo's hand, causing partial amputation.
 
 
 3
 Suit was originally brought against C & O for negligence in the transportation of the steel shipment. Burpo then amended his complaint to include Algoma for negligence in the loading of the steel shipment. Burpo did not add Wire and Supply, a Michigan corporation, as a defendant, thus preserving complete diversity between plaintiffs and defendants.
 
 
 4
 After discovery, Burpo entered into a stipulation for a voluntary dismissal settlement with prejudice as to co-defendant C & O. Trial Judge Ralph B. Guy accepted the voluntary dismissal with prejudice of Burpo's claim against C & O, no objection being made by Algoma.
 
 
 5
 Six months later, before trial, Algoma filed a third party complaint impleading both C & O and Wire and Supply for purposes of contribution. On July 29, 1983, as trial approached, the newly impleaded Wire and Supply entered into a settlement agreement paying $5,000 to plaintiff Burpo for his promise not to sue. At the time of this release the normal statutory period for Burpo to bring a claim against Wire and Supply had expired.[1]
 
 
 6
 Both C & O and Wire and Supply then moved for summary judgment on Algoma's contribution complaint against them. C & O argued that the court's prior dismissal with prejudice from Burpo's original claim served as a final adjudication establishing no tort liability on its part. Alternatively, C & O also argued that Burpo's voluntary action served as a release absolving C & O of any liability. Wire and Supply argued similarly that its release or agreement with Burpo insulated it from any tort contribution liability.
 
 
 7
 Judge Guy granted summary judgment to both C & O and Wire and Supply after hearing oral arguments on the motions. Algoma now on appeal challenges the legal basis for this summary judgment, and argues that the ruling was prejudicial because these dismissed defendants had participated in the selection of the jury. Plaintiff Burpo was thus allowed more peremptory challenges because Algoma had to share the defendant challenges with these antagonistic co-defendants.
 
 
 8
 Algoma's challenge to the dismissal of C & O and Wire and Supply will be addressed before proceeding with its legal challenges to the 303,000 jury verdict.[2]
 
 
 9
 I. Algoma's Challenge to Court's Dismissal of C & O
 
 
 10
 The Michigan contribution statute, which is controlling, states in pertinent part:
 
 
 11
 (1) Except as otherwise provided in this act, when 2 or more persons become jointly or severally liable in tort for the same injury to a person or property or for the same wrongful death, there is a right of contribution among them even though judgment has not been recovered against all or any of them.
 
 
 12
 M.C.L. Sec. 600.2925a(1); M.S.A. Sec. 27A.2925(a)(1) (emphasis added).
 
 
 13
 The trial court held that C & O was not responsible for contribution to Algoma because it did not fall in the statutorily-required class of persons who were 'jointly or severally liable in tort.' The court ruled that the court's previous dismissal with prejudice of the Burpo claim against C & O represented a full adjudication of no tort liability. Thus, according to the trial court, Algoma could not claim contribution because of C & O's conclusive affirmative defense of no original tort liability to the plaintiff.
 
 
 14
 We have held that a dismissal with prejudice represents a full adjudication of party liability.[3] In Smoot v. Fox, 340 F.2d 301, 303 (6th Cir. 1965), this court stated:
 
 
 15
 Dismissal of an action with prejudice is a complete adjudication of the issues presented by the pleadings and is a bar to a further action between the parties. An adjudication in favor of the defendants, by court or jury, can rise no higher than this.
 
 
 16
 (Emphasis added). See also Cream Top Creamery v. Dean Milk Co., 383 F.2d 358, 362 (6th Cir. 1967).
 
 
 17
 It is true that Smoot characterizes a dismissal with prejudice as a bar to further action 'between the parties' only. 340 F.2d at 303. Yet Smoot also unequivocally states that dismissal with prejudice is a 'complete adjudication of the issues presented.' Id. We thus believe that a proper dismissal of C & O with prejudice has the effect of precluding Algoma from establishing C & O's necessary predicate liability as a joint tortfeasor for contribution.
 
 
 18
 Algoma unfortunately failed to challenge this dismissal of C & O by Burpo in a timely fashion.[4] We decline to reverse on appeal this dismissal as improperly granted, and hold that its effect insulates C & O from Algoma's contribution claim.
 
 
 19
 II. Algoma's Challenge to Court's Dismissal of Wire and Supply
 
 
 20
 Wire and Supply, never joined as a defendant party by Burpo, gave $5,000 for plaintiffs' release of possible claims against it.[5] It is undisputed that an effective release from tort liability by Burpo insulates Wire and Supply from a subsequent contribution claim by Algoma. See M.C.L. Sec. 600.2925(d); M.S.A. Sec. 27A.2925 ('good faith' release 'discharges the tort-feasor . . . for contribution to any other tort-feasor.') Algoma, however, argues that the release is ineffective because of a failure of consideration flowing from the Burpos. In this regard, Algoma relies upon a three-year Michigan statute of limitations, M. C. L. Mich. Sec. 600.5805(7); M.S.A. Sec. 27A 5805(7), covering tort actions.
 
 
 21
 Wire and Supply admits that the statutory period had expired at the time of its settlement and release. It asserts, nevertheless, that the agreement was based upon sufficient consideration flowing from plaintiffs. Wire and Supply acknowledges that the agreement was negotiated primarily to insulate it from a claim by Algoma of possible contribution liability. Algoma was free to pursue such a claim because a joint-tortfeasor contribution action represents a separate equitable action independent from the underlying tort suit. Sziber v. Stout, 419 Mich. 514, 358 N.W.2d 330, 335 (1984). Thus the statute of limitations on Algoma's contribution action did not expire until one year after an unfavorable final judgment against it had been rendered. Sziber, supra, 358 N.W.2d at 338; M.C.L. Sec. 600.2925(c)(3); M.S.A. Sec. 27A.2925(3)(3).
 
 
 22
 The trial court agreed with Wire and Supply that the Burpo release represented sufficient legal consideration. The court held that the statute of limitations did not operate in a per se fashion to prevent a suit by the Burpos against Wire and Supply.[6] The statute of limitations is instead an affirmative defense that must be specifically pled by a defendant and can be avoided by a plaintiff under certain circumstances.[7]
 
 
 23
 Very little modern Michigan case law directly addresses the question whether the release of an apparently expired claim can represent sufficient consideration. In Taylor v. Weeks, 129 Mich. 233, 88 N.W. 466 (1901), however, the Michigan Supreme Court took a contrary view from the trial court here and held that a promise not to bring claim 'barred by the statute of limitations' represents a promise 'without sufficient consideration.' 129 Mich. at 233, 88 N.W. at 466 (citing from case headnote in both volumes). Weeks has apparently not been cited in Michigan case law for almost the lasthalf-century.[8] Yet it has also never been overruled by the Michigan Supreme Court.
 
 
 24
 Weeks could possibly be distinguished from the instant case, because of 'circumstances [showing] . . . prima facie that there was no valid claim in the first instance.' 88 N.W. at 467.[9] Weeks involved a suit against a deceased widow's estate by a former apprentice worker of her previously deceased husband. The worker had agreed not to press a supposed claim (for services performed) against the husband's estate in exchange for the wife's belatedly written promise to pay him out of her own estate. Thus Weeks presented a case of a party possessing only a false claim against an apparently unsophisticated and newly deceased widow. The trustee of the widow's estate acting as party to the alleged contract, moreover, moved to void the contract. In the instant case, Algoma, as a third party, attacks the sufficiency of consideration, particularly as it relates to its substantial claim for contribution.
 
 
 25
 We are nevertheless reluctant to ignore established Michigan case law precedent on this question.[10] More important, a rejection of the Weeks rationale would not result in an affirmance. Even if it were assumed that the agreement between the Burpos and Wire and Supply is legally sufficient to bar any subsequent action by the Burpos against Wire and Supply, it does not follow that this agreement between the plaintiffs and Wire and Supply bars Algoma as a thirdnon-contractual party from making an equitable claim of contribution against Wire and Supply. We conclude that it is unfair and unreasonable to hold that an agreement for such questionable consideration paid by Wire and Supply necessarily bars the claim of Algoma for equitable relief from another potential joint tortfeasor.
 
 
 26
 We recognize, on the other hand, that Wire and Supply should not be completely precluded from protecting a potentially exposed legal interest by negotiating a settlement. The Final Pretrial Order entered by the trial court noted that defendant Algoma 'has repeatedly stated that it will offer only a nuisance value in settlement of said claim, and such offer is totally unacceptable to Plaintiff.' Algoma's apparent reluctance to settle obviously kept Wire and Supply open to liability due to the potentiality of an equitable contribution action by Algoma in the event of its loss of trial (which, of course, did occur). If the trial court had relied on this evidence to rule that Algoma's anti-negotiation stance was unreasonable and constituted a waiver of any objections to Wire and Supply's settlement, we would be faced with a different question. We now REMAND for reconsideration to the district court the sufficiency of consideration of the purported release and its effect on Algoma in light of the equities found to be present at the time.
 
 
 27
 III. Algoma's Challenge to the Jury Selection Process
 
 
 28
 Algoma also claims that it was unduly prejudiced by C & O and Wire and Supply's participation in the jury selection process before their summary judgment dismissals.[11] While Burpo received six peremptory challenges, Algoma received three and C & O shared three with Commercial Wire.
 
 
 29
 This question about improper jury selection procedure in multiparty suits involves whether the trial judge engaged in an abuse of his undeniably broad discretionary powers. 28 U.S.C. Sec. 1870; Fedorchick v. Massey-Ferguson, Inc., 577 F.2d 856 (3d Cir. 1978). Algoma is able to establish no clear ground of prejudice with respect to this issue. The other two parties were then involved in the suit only for purposes of contribution to Algoma. If Algoma were found not liable, they would not be liable in contribution. They thus had strong reason not to be antagonistic during the trial proceedings. We accordingly find no merit in Algoma's position in this respect.
 
 
 30
 IV. The Burpos' Negligence Claim Against Algoma
 
 
 31
 Many of the facts are in dispute in this controversy. The following outline of events, however, would seem to be undisputed:
 
 
 32
 1. Portec, Inc. employee, Dewey Burpo, was injured while trying to place a chain or holding device under a package of steel that was being temporarily lifted by a cable sling device; the cable broke and his hand was crushed by the falling package of steel.
 
 
 33
 2. Officials of Portec thought it necessary to lift up the package because the package had arrived resting on only one 4"' X 4"' X 8"' piece of timber; this apparently left not enough space between the floor and the package to wrap the chain around the bottom side of the package.
 
 
 34
 3. Portec had specified as usual to steel manufacturer and loader Algoma that all such packages should have at least three such timber supports between a package and the floor;
 
 
 35
 4. Five other steel packages in this shipment had three such timber supports underneath them.
 
 
 36
 5. The apparently missing timber supports were found somewhere else in the transport car.
 
 
 37
 Algoma essentially argues that the trial court should have granted a directed verdict or judgment notwithstanding the verdict under the above-related set of circumstances. In such a situation it is clear that this court must evaluate the evidence in the light most favorable to Burpo as the non-moving party who received the jury verdict. Gillham v. Admiral Corporation, 523 F.2d 102 (6th Cir. 1975); Teti v. Firestone Tire and Rubber Co., 392 F.2d 294 (6th Cir. 1968). In order to avoid a directed verdict or judgment notwithstanding the verdict, the only burden on the plaintiff was to establish some credible proof of the four necessary elements in a negligence action: (a) that defendant owed a duty to the plaintiff; (b) that defendant violated the duty; (c) that defendant's violation of duty was a proximate cause of incident involving plaintiff; and (d) that plaintiff actually suffered damages. Falkner v. Fetzer, Inc., 113 Mich. App. 500, 317 N.W.2d 337, 339 (1982).
 
 A. Duty
 
 38
 It appears that Michigan law would impose a duty of care on Algoma stemming from its undertaking of the activity in question and in view of its contractual relationship with Portec. See Clark v. Dalman, 379 Mich. 251, 150 N.W.2d 955, 960 (1967) (affirming the theory that 'accompanying every contract is a common law duty to perform with ordinary care the thing agreed to be done'). Algoma and Portec enjoyed an on-going contractual relationship for a number of years. Portec specifically requested how it wanted the steel packaged. Algoma's package and loading supervisor, Mr. Joseph Nadeau, also acknowledged that Algoma was required to meet specific loading regulations of the American Association of Railroads.
 
 B. Breach of Duty
 
 39
 Burpo presented circumstantial evidence from which a reasonable inference might be drawn that Algoma was responsible for a bad packing job. Plaintiffs pointed to the testimony of Portec employees who said that they had previously witnessed the arrival of steel packages with only one supporting timber block. A Portec official also stated that he had complained to Algoma about faulty loading. On cross-examination an Algoma foreman appeared to contradict a previous statement that he had never known of such one-piece support loading.
 
 
 40
 Perhaps the strongest circumstantial evidence came from third parties involved. Plaintiffs point in the record to a document submitted by Algoms in which a railroad official had previously disclaimed any responsibility for Algoma shipments due to 'poor loading practices' [emphasis added]. An expert witness in mechanical engineering, Professor Thomas Manos of the University of Detroit, also testified that 1) it was possible for the steel package to be effectively loaded with one timber block and 2) it was doubtful that any physical force during transportation could cause such significant shifting of the steel and the support blockage as suggested by Algoma. An Algoma foreman, George Glemnitz, also admitted that he had never heard of a situation where such massive shifting occurred in transportation.
 
 
 41
 Defendant Algoma essentially attacks the circumstantial nature of this evidence. We find this to be sufficient evidence, although indirect, under the circumstances of this case to support a jury verdict.
 
 C. Proximate Cause
 
 42
 Defendant Algoma especially emphasizes that fault on the part of the railroad transporter C & O and Burpo's employer, Portec, may have been indicated. It is not enough, however, for Algoma to show that negligence by the railroad or employer could have been contributing causes to his injury. Algoma must show that these parties are the sole proximate or superseding causes of his injury. But in our view of the record, Algoma provided no strong evidentiary grounds to establish that the rail transportation provided by C & O caused significant shifting of the blocks.
 
 
 43
 Algoma is thus primarily relegated to the argument either that the employer Portec was guilty of superseding negligence or employee Burpo guilty of contributory negligence in the attempt to unload the package. Algoma concludes that Portec's and Burpo's attempted unloading of the package was 'in violation of Federal OSHA and state MIOSHA safety standards.' This charge is supported by no discussion of the standards involved nor any reference to the record. Algoma then goes on to assert that these supposed unloading violations should have formed a presumption of negligence per se which the Burpos failed to rebut.
 
 
 44
 We cannot agree with Algoma's claim that either Portec's and/or Burpos' violation of federal regulations was so strongly established beyond dispute in the record. We cannot find error in the trial court § judgment that a reasonable jury might have found Algoma liable for proximately causing the injury. In such complicated factual situations, the issue of negligent liability is a question for the jury rather than a question of law for the court. The jury was specifically instructed on and rejected the defense of contributory negligence. The function of an appellate court is not to try de novo these contested fact issues, even those closely related to ultimate findings of fact and related conclusions of liability.
 
 D. Damages
 
 45
 On appeal the question of damages is governed by an 'abuse of discretion' standard regarding the trial court's refusal to reject the jury's determination. See Fed. R. Civ. P. 59. It is not disputed that four of Burpo's fingers have been amputated on his right working hand. Dr. Alexander Kelly, a plastic surgeon, testified that Burpo was now necessarily limited to one-hand jobs. The personnel director at Portec also gave specific testimony regarding Burpo's approximate $14,060.80 salary. Even if our view of adequate damages would have differed from those of the factfinders, we cannot conclude that the trial court abused its discretion in refusing to adjust this particular award. We rather hold that the jury's verdict was within reasonable limits under the evidence.
 
 
 46
 Algoma also challenges the court's award of pre-judgment interest. Federal law explicitly grants post-judgment interest but is silent on the question of pre-judgment interest. See 28 U.S.C. Sec. 1961(a). This court has held that the awarding of pre-judgment interest in diversity cases is controlled by state law. See American Anodco, Inc. v. Reynolds Metal Co., 743 F.2d 417, 425 (6th Cir. 1984); Clissold v. St. Louis-San Francisco Railway, 600 F.2d 35, 39 n.3 (6th Cir. 1979). The awarding of pre-judgment interest dating from the filing of a complaint in a successful civil action is mandatory under Michigan law. See MSA Sec. 27A.6013, MCL Sec. 600.6013; McGrath v. Clark, 89 Mich. App. 194, 280 N.W.2d 480, 482 (1979). Thus the trial court did not err in granting prejudgment interest dating from the filing of the complaint.
 
 
 47
 The court, however, additionally computed interest from date of injury until the filing of the complaint into the judgment award. Plaintiff Burpo's complaint requested judgment only beginning with 'the filing of the complaint.' This court has held that an 'award of interest should be restricted to the amount specifically prayed for in the complaint.' Steffen v. United States, 213 F.2d 266, 272 (6th Cir. 1954). The trial court therefore erred in awarding this precomplaint interest as part of the judgment.
 
 
 48
 The district court's order dismissing Wire and Supply is VACATED and REMANDED for reconsideration consistent with this opinion, and, the district court's award of precomplaint interest is VACATED and set aside. In all other respects, we AFFIRM the judgment of the district court.
 
 
 
 *
 Judge Phillips participated in the argument but died (August 3, 1985) before the decision was reached
 
 
 [1]
 For discussion of applicable Michigan statute, see infra pgs. 6-7
 
 
 [2]
 The jury awarded Dewey Burpo $300,000 in damages for the injury to his hand. Beverly Burpo, his wife, received $3,000 for loss of consortium. The court reduced the amount to $298,000 due to the Burpos' $5,000 settlement with Wire and Supply
 
 
 [3]
 On appeal Algoma emphasizes that C & O gained a voluntary dismissal by stipulation from Burpo and argues that an initial voluntary dismissal should not be treated as with prejudice. Algoma cites language from Cabrera v. Municipality of Bayamon, 622 F.2d 4, 206 (1st Cir. 1980), to the effect that '[t]he complaint against . . . [defendant] was voluntarily dismissed and the first such dismissal must be without prejudice [emphasis added].' There is no mention in Cabrera, however, that the dismissal was explicitly with prejudice as here. The Cabrera court was asserting the view that a first voluntary dismissal not explicitly labeled as 'with prejudice' will always be construed as 'without prejudice.' See Fed. R. Civ. P. 41 ('Dismissal of Actions')
 In Smoot this court explicitly recognized that it was the plaintiff who made the motion for voluntary dismissal 'with prejudice.' 340 F.2d at 303. This court also stated that '[w]e know of no power in a trial judge to require a lawyer to submit evidence on behalf of a plaintiff, when he considers he has no cause of action or for any other reason wishes to dismiss his action with prejudice, the client being agreeable.' Id. Smoot upheld a plaintiff's prerogative to dismiss with prejudice.
 
 
 [4]
 Algoma now suggests that the voluntary dismissal of C & O by plaintiff Burpo was collusive in nature. This allegation, however, should have been made in objection to the trial court's original dismissal of C & O
 
 
 [5]
 The key part of the release states as follows:
 B. DEWEY BURPO and BEVERLY BURPO, do hereby release and forever discharge THE COMMERCIAL WIRE ROPE & SUPPLY COMPANY, INC., only, from all consequences of the accident which took place on August 23, 1977 wherein DEWEY BURPO suffered personal injuries.
 * * *
 D. That this Release and Covenant will operate to satisfy the Pro Rata share of the COMMERCIAL WIRE ROPE & SUPPLY COMPANY, INC., of any joint judgment or judgment for contribution entered against THE COMMERCIAL WIRE ROPE & SUPPLY COMPANY, INC.
 
 
 [6]
 The trial court stated:
 [T]he statute of limitations doesn't operate automatically. It is an affirmative defense. And it's up to the defendant who has the potential liability to weigh and determine whether that would be a complete bar or not, and not for somebody else to substitute their judgment. Therefore, when a defendant such as Commercial Wire and Supply Company here enters into a good-faith settlement with the plaintiff, the fact that arguably there could be an assertion of the statute of limitations against the plaintiff with whom he has settled would not keep the contribution statute from operating.
 
 
 [7]
 Under Michigan law there are a number of exceptions to operation of a statute of limitations defense:
 
 
 [1]
 if plaintiff was a minor or insane during statutory period (M.C.L. Sec. 600.5851; M.S.A. Sec. 27A.5851)
 
 
 [2]
 If plaintiff died before expiration of or thirty days after statutory period (M.C.L. Sec. 600.5852; M.S.A. Sec. 27A-5852)
 
 
 [3]
 If defendant was absent from state during statutory period (M.C.L. Sec. 600.5853; M.S.A. Sec. 27A-5853)
 
 
 [4]
 If plaintiff could not file suit due to war during statutory period (M.C.L. Sec. 600.5854; M.S.A. Sec. 27A.5854); or
 
 
 [5]
 If defendant had fraudulently cancelled basis of claim from plaintiff during statutory period (M.C.L. Sec. 600.5855; M.S.A. Sec. 27A.5855)
 Wire and Supply acknowledges that none of these exceptions apply here. It mentions the possibility of number 5 above, but we do not understand it to be seriously asserting its own fraudulent concealment of a basis for suit during the statutory period.
 
 
 [8]
 But see Steep v. Harham, 241 Mich. 652, 217 N.W. 787, 788 (1928) (stating that the Weeks case 'would control' in the case if note exchanged as consideration had been 'outlawed' due to expiration of statutory period for the bringing of a claim in the note); see also Kirchhoff v. Morris, 282 Mich. 90, 275 N.W. 778, 780 (1937) (citing Weeks as authoritative on general principle of consideration); Newman & Snell's State Bank v. Hunter, 243 Mich. 331, 220 N.W. 665, 666 (1928) (dicta recognizing holding in Weeks case); Wierman v. Bay City-Michigan Sugar Co., 142 Mich. 422, 106 N.W. 75, 82 (1905) (citing Weeks as analogous support for proposition that forbearance to bring alleged attachment suit does not constitute sufficient consideration if no ground existed for attachment)
 
 
 [9]
 The lack of a bona fide claim, however, was clearly not the sole grounds stated by the court. The Weeks court stated that 'the circumstances under which these services were rendered, as well as the time of the rendition of the services, establish prima facie that there was no validity to the claim, and that it could not be enforced against the estate.' 129 Mich. at 236; 88 N.W. at 467
 
 
 [10]
 We note the following contrary advice: 'In some cases it has been held that forebearance to press a claim that is barred by statute of limitations . . . is not sufficient as consideration. These cases should not be followed.' Corbin on Contracts, Vol. I, 602 (1963 ed.)
 
 
 [11]
 Algoma also adds the assertion that it was unfairly surprised by the summary judgment motions of C & O and Wire and Supply. Algoma, however, fails to raise this charge as an independent issue. We find no basis for reversal in this assertion by Algoma